# No. 24-12278

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## *for the*

## 𝔈𝔩𝔢𝔳𝔢𝔫𝔱𝔥 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

───── • ─────

ROBERT SCOT BUILLDING VENTURE LLC,
RSBV PATHWAY LLC,

*Plaintiffs-Appellees,*

— v. —

JASON CLOTH,

*Defendant-Appellant.*

─────────────────

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO: 9:23-cv-80282-RLR
*(Robin Lee Rosenberg, U.S. District Judge; Bruce E. Reinhart, U.S. Magistrate Judge)*

# INITIAL BRIEF OF APPELLANT

WILLIAM R. FRIED
SAMUEL J. BAZIAN
HERRICK, FEINSTEIN LLP
2 Park Avenue, Floor 22
New York, New York 10016
(212) 592-1611

LEONARD K. SAMUELS
BERGER SINGERMAN, LLP
201 East Las Olas Blvd., Suite 1500
Ft. Lauderdale, Florida 33301
(954) 525-9900

W. PERRY HICKS
BERGER SINGERMAN, LLP
1540 Brickell Ave. SE, Suite 1900
Miami, Florida 33131
(305) 755-9500

*Counsel for Defendant-Appellant Jason Cloth*

CP COUNSEL PRESS   (800) 4-APPEAL • (811089)

## CERTIFICATE OF INTERESTED PERSONS AND <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Cir. R. 26.1-1, 26.1-2(a), and 26.1-3, Appellant, Jason Cloth ("Appellant" or "Cloth"), provides the following Certificate of Interested Persons and Corporate Disclosure Statement:

Bazian, Samuel J., Counsel for Appellant

Berger Singerman LLP, Counsel for Appellant

Bilzin Sumberg Baena Price & Axelrod LLP, Counsel for Appellees

Cloth, Jason, Appellant

Creative Wealth Media Finance Corp., Defendant

Curtis, Marianne, Counsel for Appellant

Drescher, IIana Arnowitz, Counsel for Appellees

Fried, William R., Counsel for Appellant

Herrick, Feinstein LLP, Counsel for Appellant

Hicks, William Perry, Counsel for Appellant

Jonelis, David, Counsel for Appellees

Koutsodendris, Stephanie, (former) Counsel for Appellees

Lavely & Singer, Counsel for Appellees

Leeker, Kelsey J., Counsel for Appellees

Reinhart, Hon. Bruce E., United States District Court Magistrate Judge

Robert Scot Building Venture LLC, Appellee

Rosenberg, Hon. Robin L., United States District Court Judge

RSBV Pathway LLC, Appellee

Sakona, Shalia, Counsel for Appellees

Samuels, Leonard K., Counsel for Appellant

Wagner, Scott N., Counsel for Appellees

Appellant certifies that he is not aware of any other entities with an interest in the outcome of this case, including subsidiaries, conglomerates, or affiliates.

Dated: October 21, 2024

> */s/ Samuel J. Bazian*
> Samuel J. Bazian
> *Attorney for Appellant*

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Jason Cloth requests oral argument. This appeal follows the entry of judgment against Cloth, personally, in excess of $19 million dollars. Given the substantial judgment against him and the several legal issues herein, Cloth believes oral argument will assist the Court's resolution of this appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ...................................................... C1

STATEMENT REGARDING ORAL ARGUMENT ............................................... i

TABLE OF AUTHORITIES ................................................................................. iv

JURISDICTIONAL STATEMENT ........................................................................ 1

STATEMENT OF THE ISSUES ............................................................................ 2

STATEMENT OF THE CASE ................................................................................ 4

I.     STATEMENT OF RELEVANT FACTS ............................................. 4

     A.     Plaintiffs Enter into Contracts with Creative Wealth ................ 4

          1.     The Film Contracts Between RSBV and Creative Wealth ...................................................................................... 4

          2.     The Pathway Contract Between RSBVP and Creative Wealth ............................................................................... 6

          3.     Plaintiffs' Acknowledgements of Risk and Non-Reliance on Prior Representations ..................................... 6

     B.     RSBVP's Fraud Allegations ....................................................... 7

     C.     Plaintiffs' Causes of Action ....................................................... 8

II.     COURSE OF PROCEEDINGS AND DISPOSITIONS ...................... 9

     A.     Plaintiffs File Their Complaint in New York, Withdraw It, and Re-File in Florida ......................................................... 9

     B.     The District Court Denies Defendants' Motion to Dismiss ..................................................................................... 10

     C.     The Parties Diligently Conduct and Complete Discovery, and Defendants' Counsel Subsequently Withdraw from The Action ................................................................................ 12

III.   STANDARDS OF REVIEW ............................................................17

SUMMARY OF THE ARGUMENT .....................................................18

ARGUMENT .........................................................................................21

I.     The District Court Reversibly Erred By Denying Cloth's
       Motion to Dismiss the Complaint for Lack of Personal
       Jurisdiction ..............................................................................21

II.    The District Court Should Have Granted Cloth's Motion to
       Dismiss the Fraud Claim Against Him For Failure To State a
       Cause of Action ........................................................................30

III.   The District Court Abused Its Discretion in Denying Cloth's
       Motion for a Continuance of Trial Without Explanation....................37

IV.    The Jury's Award of $13 Million in Punitive Damages Was
       Excessive ..................................................................................42

CONCLUSION......................................................................................46

CERTIFICATE OF COMPLIANCE........................................................47

CERTIFICATE OF SERVICE .................................................................48

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Adler v. WestJet Airlines, Ltd.*,
    31 F. Supp. 3d 1381 (S.D. Fla. 2014) ................................................................. 35

*Allahar v. Zahora*,
    59 F.3d 693 (7th Cir. 1995) ............................................................................. 44

*Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd*,
    722 F. App'x 870 (11th Cir. 2018) ............................................................. 22, 23

*BMW of N. Am. v. Gore*,
    517 U.S. 559, 116 S. Ct. 1589 (1996) ........................................................ 42, 44

*DeJesus v. Lewis*,
    14 F.4th 1182 (11th Cir. 2021) ......................................................................... 18

*Fontainebleau Fla. Hotel, LLC v. S. Fla. Hotel & Culinary Emps. Welfare
Fund*,
    508 F. Supp. 3d 1239 (S.D. Fla. 2020) ........................................................... 5, 6

*Fore River, LLC v. Monahan*,
    No. 5:18-CV-409-OC-39, 2019 WL 13062724 (M.D. Fla. Sept. 13, 2019) ...... 38

*Gastaldi v. Sunvest Resort Communities, LC*,
    709 F. Supp. 2d 1284 (S.D. Fla. 2010) ............................................................ 40

*Green v. USF&G,Corp.*,
    772 F. Supp. 2d 1258 (S.D. Fla. 1991) ............................................................ 27

*Kemp v. Am. Tel. & Tel. Co.*,
    393 F.3d 1354 (11th Cir. 2004) ................................................................. 18, 45

*Kuchenmeister v. HealthPort Techs., LLC*,
    753 F. App'x 794 (11th Cir. 2018) .................................................................. 33

*Lans v. Stuckey*,
    203 F. App'x 956 (11th Cir. 2006) .................................................................. 37

*Larach v. Standard Chartered Bank Int'l (Americas) Ltd.*,
    09-21178-CIV, 2011 WL 13173896 (S.D. Fla. June 7, 2011) ...........................35

*Martins v. Royal Caribbean Cruises, Ltd.*,
    2018 WL 1072196 (S.D. Fla. Feb. 27, 2018) .....................................................38

*McNutt ex rel. U.S. v. Haleyville Med. Supplies, Inc.*,
    423 F.3d 1256 (11th Cir. 2005) ..........................................................................18

*Melgarejo v. Pycsa Panama, S.A.*,
    537 F. App'x 852 (11th Cir. 2013) ...............................................................21, 22

*Micro Fin. Advisors, Inc. v. Coloumb*,
    No. 23-11062, 2023 WL 7156898 (11th Cir. 2023)....................................27, 28

*Oldfield v. Pueblo De Bahia Lora, S.A.*,
    558 F.3d 1210 (11th Cir. 2009) ..........................................................................17

*Omnipol, A.S. v. Multinational Def. Servs., LLC*,
    32 F.4th 1298 (11th Cir. 2022) ...........................................................................30

*Rance v. Rocksolid Granit USA, Inc.*,
    489 F. App'x 314 (11th Cir. 2012) .....................................................................40

*Rink v. Cheminova, Inc.*,
    400 F.3d 1286 (11th Cir.2005) ...........................................................................37

*Robinson v. Giarmarco & Bill, P.C.*,
    74 F.3d 253 (11th Cir. 1996) ..............................................................................17

*Romero v. Drummond Co.*,
    552 F.3d 1303 (11th Cir. 2008) ..........................................................................37

*S&B Investments, LLC v. Motiva Enterprises, L.L.C.*,
    No. 03-61993, 2004 WL 3250306 (S.D. Fla. Dec. 6, 2004) ..............................34

*Sec. & Exch. Comm'n v. Levin*,
    849 F.3d 995 (11th Cir. 2017) ............................................................................39

*SkyHop Technologies, Inc. v. Narra*,
    58 F.4th 1211 (11th Cir. 2023) ...........................................................24, 25, 26, 28

*S.K.Y. Mgmt. v. Greenshoe, Ltd.*,
2007 WL 9701121 (S.D. Fla. March 11, 2007)............................................35, 36

*Sloss Indus. Corp. v. Eurisol*,
488 F.3d 922 (11th Cir. 2007) ............................................................22

*Smith-Weik Mach. Corp. v. Murdock Mach. & Eng'g Co.*,
423 F.2d 842 (5th Cir. 1970) ..............................................................40

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
538 U.S. 408, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003) ....................42, 43, 44

*Sun Bank, N.A. v. E.F. Hutton & Co.*,
926 F.2d 1030 (11th Cir. 1991) ....................................................28, 29

*Tufts v. Hay*,
977 F.3d 1204 (11th Cir. 2020) ......................................24, 25, 26, 27

*Vital Pharms., Inc. v. Balboa Cap. Corp.*,
No. 14-62469-CIV, 2016 WL 4479370 (S.D. Fla. Aug. 25, 2016), *aff'd*,
806 F. App'x 884 (11th Cir. 2020)....................................................34

*Volt, LLC v. Volt Lighting Group LLC*,
369 F. Supp. 3d. 1241 (M.D. Fla. 2019)............................................30

*Walack v. Worldwide Machinery Sales*, Inc.
275 F. Supp. 2d 1358 (M.D. Fla. 2003)............................................27

*Walden v. Fiore*,
571 U.S. 277, 134 S. Ct. 1115, 188 L.Ed.2d 12 (2014) ........................22, 23, 25

*Williams v. First Advantage LNS Screening Sols. Inc*,
947 F.3d 735 (11th Cir. 2020) ............................................................18

## State Cases

*Advanced Marketing Systems Corp. v. ZK Yacht Sales*,
830 So. 2d 924 (Fla. 4th DCA 2002)..................................................34

*Butler v. Yusem*,
44 So. 3d 102 (Fla. 2010) ..................................................................33

*Cortez v. Palace Resorts, Inc.*,
 123 So. 3d 1085 (Fla. 2013) ...............................................................21

*Engle v. Liggett Grp., Inc.*,
 945 So. 2d 1246 (Fla. 2006) ...............................................................45

*Grimes v. Lottes*,
 241 So. 3d 892 (Fla. Dist. Ct. App. 2018) ..........................................35

*GVK International Business Group, Inc. v. Levkovitz*,
 2020 WL 4197407 (Fla. 3d DCA July 22, 2020) .................................34

## Statutes & Rules

28 U.S.C. § 1291 ..........................................................................................1

28 U.S.C. § 1332(a)(2) ................................................................................1

Fed. R. Civ. P. 12(b)(2).........................................................................9, 10

Fed. R. Civ. P. 12(b)(6).........................................................................9, 10

Fla. Stat. Ann. § 768.73 .............................................................................45

Fla. Stat. § 48.193(1)(a)(2) ..................................................................11, 21

## JURISDICTIONAL STATEMENT

This is an appeal from a final judgment in favor of Appellee RSBV Pathway LLC ("RSBVP") and against Cloth in the district court entered on June 21, 2024. D.E. 133. The district court had diversity jurisdiction under 28 U.S.C. § 1332(a)(2). Notice of appeal was timely filed on July 12, 2024. D.E. 135. This Court has jurisdiction over the appeal of the final judgment and all preliminary orders merged therein pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.      Whether the district court reversibly erred in denying Cloth's motion to dismiss the complaint for lack of personal jurisdiction given that Cloth is a Canadian resident who does not have minimum contacts with Florida and exercising jurisdiction over him offended traditional notions of fair play and substantial justice.

2.      Whether the district court reversibly erred in denying Cloth's motion to dismiss RSBVP's cause of action for fraud where the few alleged misrepresentations were directly contradicted by the explicit terms of the parties' agreements and/or otherwise non-actionable as a matter of law.

3.      Whether the district court abused its discretion in denying Cloth's motion for a continuance of trial to retain counsel and prepare for trial despite the fact that Cloth proceeded diligently in this action, a continuance would have allowed Cloth to adequately defend himself against RSBVP's complex multi-million fraud claim, a continuance would not have inconvenienced the district court or RSBVP, and Cloth would have suffered (and, in fact, did suffer) substantial prejudice from the district court's refusal to grant a continuance.

4.      Whether the jury's award of $13 million in punitive damages against Cloth was unconstitutionally excessive given that the fraud claim against Cloth involved a purely economic tort, RSBVP was not financially vulnerable, and Cloth

already suffered substantial punishment by the jury's award of compensatory

damages against him in excess of $6.5 million.

## STATEMENT OF THE CASE

## I.    STATEMENT OF RELEVANT FACTS[1]

A.    Plaintiffs Enter into Contracts with Creative Wealth

1.    *The Film Contracts Between RSBV and Creative Wealth*

Plaintiff Robert Scot Building Venture LLC ("RSBV") and Plaintiff-Appellee RSBV Pathway LLC ("RSBVP" and together with RSBV, "Plaintiffs") are Florida-based investors (D.E. 1 ¶¶ 6-7, 14, 49), and Creative Wealth Media Finance Corp. ("Creative Wealth" and together with Cloth, "Defendants") was a film financing company based in Toronto, Canada. D.E. 22 ¶ 3.  Cloth is formerly a managing partner of Creative Wealth and resides in Toronto, Canada. *Id.* ¶ 1-2.  Plaintiffs alleged that, between July 2019 to May 2020, RSBV entered into a series of agreements pursuant to which RSBV invested money in Creative Wealth's film projects (the "Film Contracts").  D.E. 1 ¶ 14.  For each such Film Contract, the parties entered into two agreements, a "Term Sheet" and a "Participation Agreement."[2]  *See* D.E. 22-1 through 22-11.

---

[1] Certain of the "facts" referenced herein are merely references to the allegations in Plaintiffs-Appellees' Complaint. D.E. 1. Cloth does not admit the truth of those allegations and recites them here for the purposes of this appeal and demonstrating the reasons why the district court's prior orders should be reversed.

[2] Plaintiffs did not reference in their Complaint the Participation Agreements that the parties executed in connection with each film and Term Sheet.  Nevertheless, because the authenticity of these "relationship-forming" documents that are central to their claims are undisputed, the district court was permitted to consider them on Creative Wealth and Cloth's motion to dismiss. *Fontainebleau Fla. Hotel, LLC v. S.*

The first Term Sheet, dated July 29, 2019,[3] was for the financing of the film *Ghostbusters*, in which RSBV invested $1,000,000 (the "*Ghostbusters* Contract"). D.E. 1 ¶¶ 15-16; D.E. 22-1. The second, dated January 14, 2020, was for the financing of the film *Monkey Man*, in which RSBV invested $750,000 (the "*Monkey Man* Contract"). D.E. 1 ¶¶ 18-19; D.E. 22-2. The third, dated April 21, 2020, was for the financing of *Gossamer*, in which RSBV invested $250,000 (the "*Gossamer* Contract"). D.E. 1 ¶¶ 21-22; D.E. 22-3. Fourth, RSBV made two investments in *Hailey and the Hero Heart* on or about April 21, 2020, pursuant to two Term Sheets, one for $250,000 and one for $750,000 (the "*HHH* Contracts"). D.E.1 ¶¶ 24-27; D.E. 22-4; D.E. 22-5. Fifth, in May 2020, RSBV made two investments in *Bubbles Hotel* pursuant to two contracts, one for $250,000 and one for $750,000 (the "*Bubbles* Contracts"). D.E. 1 ¶¶ 29-32; D.E. 22-6, D.E. 22-7. The sixth, dated May 4, 2020, was for the financing of *Young Bear Grylls*, in which RSBV invested $1,000,000 (the "*YBG* Contract"). D.E. No. 1 ¶¶ 34-35; D.E. 22-8. The seventh and final film RSBV financed was *Fables*, in which RSBV made two investments

_____

*Fla. Hotel & Culinary Emps. Welfare Fund*, 508 F. Supp. 3d 1239, 1244 (S.D. Fla. 2020).

[3] In their Complaint, Plaintiffs reference the dates that RSBV allegedly signed each of the Term Sheets for the films—which coincides with the effective date of the Participation Agreements for each such film—rather than the effective dates listed on the Term Sheets (the "Effective Dates"). Because the Term Sheets do not indicate when Plaintiff RSBV signed them, and they became operative on their Effective Dates, Cloth has identified the Effective Dates herein.

pursuant to two Term Sheets, one on April 17, 2020, for $750,000, and one on July 24, 2020, for $250,000 (the "*Fables* Contracts").  D.E. 1 ¶¶ 37-40; D.E. 22-9; D.E. 22-10.  Cloth was not a party to the Film Contracts.

### 2. The Pathway Contract Between RSBVP and Creative Wealth

On May 19, 2021, RSBVP and Creative Wealth entered into a Term Sheet for RSBVP to invest $6,573,024 in the first season of the *Pathway* series (the "*Pathway* Contract").  D.E. 1 ¶¶ 49-50; D.E. 22-11.  As relevant to this appeal, the *Pathway* Contract was titled "Term Sheet Memo, Financing for the First Season of the Series Entitled 'Pathway,'" D.E. 22-11 at 1.  Again, Cloth was not a party to the *Pathway* Contract.

### 3. Plaintiffs' Acknowledgements of Risk and Non-Reliance on Prior Representations

Each of the Film Contracts at issue in this action make clear that Plaintiffs' recoupment of their investments was not guaranteed.  Indeed:

- In all of the Term Sheets, the parties agreed that Plaintiffs' investments "shall *all* be recouped from gross receipts generated by the [particular film]" to the extent there were any.  *See* D.E. 22-1 through D.E. 22-11, Term Sheet at p. 1 (emphasis added).[4]

---

[4]  Though the particular language used in each Contract varies slightly, the essence and meaning are the same. *See, e.g.*, D.E. 22-1, Term Sheet at p. 1 ("The Investment . . . shall all be recouped from gross receipts generated by the Picture, if any…"); D.E. 22-2, Term Sheet at p. 1 ("The Investment . . . shall all be recouped from gross receipts generated by the Picture…"); D.E. 22-3, Term Sheet at p. 1 ("The Loan . . . shall all be recouped from gross receipts generated by the Project, if any…").

- In the six Term Sheets for *Fables*, *Bubbles*, and *HHH*, RSBV represented and warranted that it "has relied on its own examination of the investment hereunder including, but not limited to, the LSA and the merits and risks involved. Investor is aware that it may be required to bear the financial risks of this investment for an indefinite period of time." *See* D.E. 22-4 through D.E. 22-7, Term Sheet at p. 2.

- In each of the Participation Agreements, RSBV "acknowledge[d] the risks inherent in" the investments, including that "[t]here [wa]s no assurance that [RSVB] will earn a profit from or recoup its [investment]." D.E. 22-1 through D.E. 22-10, Participation Agreement § 8(a).

Finally, each Participation Agreement provided there were "no representations, warranties, covenants, conditions or other agreements, express or implied, collateral, statutory or otherwise, between the parties in connection with the subject matter of this Agreement, except as specifically set forth in this Agreement" and that "[t]he parties have not relied on and are not relying on any other information, discussion or understanding in entering into and completing the transactions contemplated by this Agreement." D.E. 22-1 through D.E. 22-10, Participation Agreement at p. 6.

B.     RSBVP's Fraud Allegations

Plaintiffs further alleged that, at the beginning of 2021—approximately eight months before the maturity date of any of the Term Sheets—RSBV's principal, Robert Harris,[5] asked Cloth for an update on when payment on certain Film

---

[5] Robert Harris is the principal of both Plaintiffs, RSBV and RSBVP. D.E. 1 ¶¶ 3, 11.

Contracts could be expected. D.E. 1 ¶ 43. According to Plaintiffs, on February 24, 2021, in response to Harris' inquiry, Cloth emailed Harris explaining that the investments in *Fables*, *Bubbles*, and *HHH* carried "'zero' risk" and would be recouped by the third quarter of 2021—which would have been *ahead* of the repayment schedule set forth in the respective Term Sheets. *Id.* ¶¶ 44-45. Cloth purportedly also told Harris that the *Monkey Man* investment would be repaid by late summer 2021. *Id.* ¶ 46. Plaintiffs alleged that "RSBV is informed and believes that" Cloth "knew at that time (based on the actual status of the corresponding Films) that there was a substantial likelihood" that the *Fables*, *Bubbles*, *HHH*, and *Monkey Man* investments "would not be timely repaid." *Id.* ¶¶ 45-46.

Finally, Plaintiffs asserted that, in May 2021, Cloth told Harris over the phone that the *Pathway* series "had already been 'greenlit' for five seasons and that Harris should therefore invest in that project." *Id.* ¶ 47.

C. Plaintiffs' Causes of Action

In their Complaint, Plaintiffs asserted two causes of action. The first was for breach of contract by both Plaintiffs against Creative Wealth for its alleged failure and refusal "to repay any of the monies loaned" under the Film Contracts and *Pathway* Contract. D.E. 1 ¶ 56.

The second was a fraud claim asserted by RSBVP against Cloth. *See id.* ¶¶ 58-65. According to RSBVP, Cloth misrepresented to Harris: (i) that the *Fables*,

*Bubbles*, and *HHH* investments would be repaid by the third quarter of 2021; (ii) that there was "'zero' risk" associated with the *Fables*, *Bubbles*, and *HHH* investments; (iii) that the *Monkey Man* investment would be repaid by late summer of 2021; and (iv) that the *Pathway* series had been "greenlit" for five seasons. *Id.* ¶¶ 59-60. In connection with its fraud claim, RSBVP sought punitive damages, claiming that Cloth "acted willfully, maliciously, oppressively and despicably with the full knowledge of the adverse effect of their [sic] actions on Plaintiff RSBVP, and with willful and deliberate disregard of the consequences to Plaintiff RSBVP such as to constitute oppression, fraud or malice." *Id.* ¶ 65.

## II.     COURSE OF PROCEEDINGS AND DISPOSITIONS

### A.     Plaintiffs File Their Complaint in New York, Withdraw It, and Re-File in Florida

Plaintiffs initially filed their claims against Defendants on December 6, 2022, before the United States District Court for the Southern District of New York under Case No. 22-cv-10329-VEC (the "SDNY Action"). *See* D.E. 20 ¶ 3. Plaintiffs subsequently filed an Amended Complaint in the SDNY Action on December 9, 2022 (the "SDNY Complaint") and asserted the same breach of contract claim against Creative Wealth and fraud claim against Cloth that they later asserted in the instant action. *See* D.E. 20-2.

On February 9, 2023, Creative Wealth and Cloth moved to dismiss the SDNY Complaint: (i) for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2)

and, (ii) with respect to the fraud claim against Cloth, for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). *See* D.E. 20-3. Faced with Defendants' motion to dismiss, on February 23, 2023, Plaintiffs filed a Notice of Voluntary Dismissal, dismissing the SDNY Action without prejudice. *See* D.E. No. 20-4. That same day, Plaintiffs filed this case before the United States District Court for the Southern District of Florida. *See* D.E. 1.

B.     The District Court Denies Defendants' Motion to Dismiss

On May 12, 2023, Defendants filed a motion to dismiss (i) the Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2); and (ii) the fraud claim against Cloth for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). *See* D.E. 21.

On July 10, 2023, the district court denied the motion to dismiss in its entirety (D.E. 40). With respect to the fraud claim, the district court held, *inter alia*, that:

> Here, when accepting all of the factual allegations pled in the Complaint as true and viewing them in the best possible light for the Plaintiffs, the Plaintiffs have pled that Mr. Cloth made false statements concerning material facts. The false statements that Mr. Cloth made when he said that CWMF would pay back the film loans, knowing that CWMF would not actually do so, and that Pathway was greenlit for five seasons, knowing that it was not, are material statements. These statements are the kinds of statements that an investor would rely upon to determine whether to invest in a new show, as the statements go to the timeline for the investor's returns on the investor's first round of investments and the strength of the new, potential investment.

*Id.* at p. 5. Moreover, the district court held that Plaintiffs adequately alleged that Cloth knew his misrepresentations were false at the time he made them, "intended his misrepresentations to induce the Plaintiffs to act and that the Plaintiffs were injured by acting in reliance upon the misrepresentations." *Id.* at 6-7.

With respect to Defendants' motion to dismiss the Complaint for lack of personal jurisdiction, as relevant to this appeal, the district court found that based on Plaintiffs' allegations—contained within the Complaint and an affidavit from Plaintiffs' principal, Harris, in opposition to the motion—the Court could assert jurisdiction over Cloth. First, it held that section 48.193(1)(a)(2) of Florida's long-arm statute—which provides that the courts of Florida have jurisdiction over claims arising out of torts committed within Florida—reaches Cloth in this case, since Plaintiffs alleged that Harris took a phone call from Cloth and received Cloth's emails containing alleged misrepresentations while Harris was in Florida. *See* D.E. 40 at p. 8-9.

Second, with respect to due process, the district court found that it had specific jurisdiction over Cloth, since (i) Plaintiffs' fraud claims arose out of or related to Cloth's calls and emails, which were directed to Harris in Florida; (ii) "Defendants purposely availed themselves of the laws of Florida" by entering into the Film Contracts with Florida-based entities and Cloth allegedly made misrepresentations on behalf of Creative Wealth to Harris while he was in Florida; and (iii) Florida's

interest in the case, Plaintiff's interest in obtaining convenient relief, and the judicial system's interest in resolving the dispute outweighed any burden on Defendants from having to litigate in Florida. *Id.* at p. 9-12.

C. The Parties Diligently Conduct and Complete Discovery, and Defendants' Counsel Subsequently Withdraw from The Action

After the district court denied Defendants' motion to dismiss, the parties proceeded diligently with discovery, which was completed per the deadlines set forth in the district court's initial scheduling order. *See* D.E. 32. The fact and expert discovery deadlines were never extended. *Id.*

Although Creative Wealth and Cloth were represented by the law firms of Herrick, Feinstein LLP ("Herrick") and Berger Singerman LLP ("Berger Singerman") from the time that Plaintiffs commenced this action, on November 28, 2023, Creative Wealth was deemed bankrupt under Canada's Bankruptcy and Insolvency Act. *See* D.E. 51-1 at p. 5. Due to the bankruptcy, Herrick and Berger Singerman were thereafter required to seek leave to withdraw as counsel to Creative Wealth (*id.*), and leave was granted on December 22, 2023. D.E. 52.

After the close of fact discovery but approximately three months before the initially scheduled trial date (*see* D.E. 32), on February 6, 2024, counsel sought leave to withdraw from their representation of Cloth due to then-unresolved issues concerning Herrick's legal fees. D.E. 67. On February 12, 2024, the district court

granted counsel's motion to withdraw, as well as a 30-day stay of proceedings. D.E. 71.

On March 6, 2024, the district court ordered Cloth to file, by no later than March 14, 2024, a notice of his intent to proceed in this action (D.E. 74) and, on March 14, 2024, Cloth filed a declaration in support of his intent to proceed defending the claims set forth in the Complaint. D.E. 76.

On April 3, 2024, Cloth advised the district court that he was actively seeking to retain counsel and had not yet found an attorney, but he was negotiating with Herrick to re-appear as his counsel in the action. D.E. 87. On April 4, 2024, Cloth again advised the district court that he was optimistic that negotiations with Herrick were progressing and he hoped to have Herrick reengaged soon. D.E. 85. In this same communication, Cloth asked the district court if it would consider an adjournment if Herrick were to file a motion for continuance. *Id.* On April 5, 2024, the district court stated that it construed Cloth's email of April 4, 2024 as a motion to continue the case's upcoming deadlines and "[would] not extend deadlines on behalf of counsel who has not made an appearance." D.E. No. 84. As a result, the District Court denied Cloth's request. *Id.*

On April 24, 2024, Cloth filed a *pro se* motion for a 60-day extension of the trial deadlines to retain new counsel and prepare for trial (the "Continuance Motion"). D.E. 93. In the Continuance Motion, Cloth noted that, due to bankruptcies

to Creative Wealth and its studio partner, Bron Studios, as well as lawsuits against the companies in both Canada and the United States, Cloth was left in a difficult financial situation. As a result, he explained, he was unable to timely pay his attorneys' invoices, causing his counsel to withdraw from their representation. *Id.* Cloth also emphasized that he is not an attorney and therefore not in a position to try this case at trial. *Id.* Critically, trial had never previously been continued prior to the filing of the Continuance Motion.

Cloth attached to his Continuance Motion a declaration from William R. Fried, lead counsel during Herrick's representation of Cloth (the "Fried Declaration"). D.E. 93-1. The Fried Declaration confirmed that Cloth and Herrick were working on resolving the outstanding fee issues, and that Herrick would be willing to continue its representation of Cloth once it was resolved but for the tight pre-trial deadlines—some of which had already passed—and the fact that trial was set to begin less than three weeks later. (*Id.*). Because these deadlines would have prevented Herrick from competently representing Cloth at trial, Herrick could only re-appear in the action if the dates set forth in the operative scheduling order and trial schedule were adjourned by 60 days from the granting of Cloth's request. *Id.*

Five days later, on April 29, 2024, the district court denied Cloth's Continuance Motion without any explanation or analysis, and it required the parties to appear remotely at a calendar call on March 1, 2024. D.E. 104.

During the May 1, 2024 calendar call, Cloth appeared *pro se* and repeatedly advised the district court that he was not a lawyer and was in no position to try the case. Specifically, Cloth stated as follows:

> Cloth: "Well, your Honor, I would like to reiterate that I am not an attorney, and I am not able to try this case and, unfortunately, the Court refused to grant an adjournment when it in no way prejudices the other side. It is simply unfair."

> The District Court: "I understand your position, and I have taken all of the factors under consideration in making my determination that the case would proceed on Monday. So, really, my question is at this point whether—in a criminal trial, for example, a Defendant must be present. In a civil case, it is really up to the Defendant whether the Defendant would be present or not. There is a preliminary instruction, something along the lines of the Defendant has decided to exercise his right not to be present. So, I just want to know what we are anticipating in terms of whether you are going to be present or not for the trial."

> Cloth: "I can't answer this right now, and I gave you my answer just before."

> The District Court: "So, if you are not there, my intention would be to express to the jury something along the lines of an instruction that is consistent with the instructions that are within the Eleventh Circuit indicating to the jury that you decided to exercise your right not to be present at trial."

May 1 Tr. 6:4-7:2. Moreover, during the calendar call, when asked by the district court whether he would take part in a settlement conference with Judge Reinhart that day, Cloth stated as follows:

> Mr. Cloth: "I am not an attorney, I can't defend myself. I can't answer that."

The Court: "I know you are not an attorney, so you don't have to tell me that anymore and I do understand that you feel disadvantaged. I am sorry about that. I tried to give you more time to get an attorney, and it is unfortunate that you weren't able to."

Mr. Cloth: "I was able to, your Honor. We sent you a notice, we were able to get an attorney."

*Id.* 15:5-13.

On May 6, 2024, Cloth again advised the district court that he was not in a position to defend himself at trial and therefore would not be attending. D.E. No. 116.

Jury trial proceedings began the next day, on May 7, 2024, and trial commenced the following day. During both days' proceedings, both the district court and Plaintiffs' counsel advised the jury that Cloth simply did not wish to attend the trial. Specifically, on May 7, 2024, the district court advised the jury as follows:

The District Court: "You will see that there are people at one table but not at the other. The persons who I will have to introduce themselves in a moment are representatives, attorneys for the Plaintiff, and in this case, the Defendant, Mr. Cloth, has decided to exercise his right not to be present, which is why there is not somebody at the other counsel table."

May 7 Tr. 13:18-23.

The Court: "Next, the Plaintiff will present its witnesses and ask them questions. After the Plaintiff questions the witness, the Defendant has the option to ask the witness questions, but as I indicated earlier, the Defendant has exercised his right not to be here in trial, so there likely will not be what is called cross-examining the witness."

*Id.* 54:21-55:1.

The following day, during closing argument—after Plaintiffs presented their case to the jury without opposition—Plaintiffs' counsel urged the jury to hold Cloth liable for compensatory and punitive damages, telling the jury:

> Mr. Jonelis: "He didn't even care about showing up for his own trial. He is sued for millions of dollars and he just blows it off like it is no big deal. Mr. Cloth doesn't care about the lives that he has ruined. You heard Robert [Harris] tell you that people had to leave retirement and go back to work because Mr. Cloth stole their money. Mr. Cloth didn't care."

May 8 Tr. p. 22:8-13.

> Mr. Jonelis: "Remember, as things currently stand, he hasn't felt punished or deterred. He didn't even bother to show up for this trial, which indicates he has a complete disregard for addressing the consequences of his actions and the losses he has caused to his investors."

*Id.* 33:23-34:2.

That same day, on May 8, 2024, the jury entered a verdict against Cloth for fraud, awarding compensatory damages of $6,573,024.00 and punitive damages of $13,000,000.00. D.E. 126.

## III.   <u>STANDARDS OF REVIEW</u>

This Court reviews the "denial of a motion to dismiss for lack of personal jurisdiction *de novo.*" *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 255 (11th Cir. 1996); *see also Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009) ("We have consistently held that the issue of whether personal jurisdiction is present is a question of law and subject to *de novo* review."). Similarly,

this Court review a district court's denial of a motion to dismiss for failure to state a claim *de novo*. *McNutt ex rel. U.S. v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1259 (11th Cir. 2005).

In considering a challenge to a district court's denial of a motion for a continuance, this Court reviews the district court's ruling for abuse of discretion. *DeJesus v. Lewis*, 14 F.4th 1182, 1202 (11th Cir. 2021).

Finally, appellate review of a whether a jury's punitive damages award is unconstitutionally excessive is conducted *de novo*. *Kemp v. Am. Tel. & Tel. Co.*, 393 F.3d 1354, 1362 (11th Cir. 2004); *Williams v. First Advantage LNS Screening Sols. Inc*, 947 F.3d 735, 744 (11th Cir. 2020).

## <u>SUMMARY OF THE ARGUMENT</u>

This appeal follows the entry of a judgment in excess of $19.5 million—including $13 million in punitive damages—that was unfairly awarded against Cloth, personally, after a jury was told repeatedly that he not only committed fraud against RSBVP, he did not even care to show up to trial and defend himself. That, of course, was untrue. In reality, Cloth did not appear at trial because, as he advised the district court, he was unable to represent himself in a complex multi-million fraud trial without representation, and he required a brief adjournment of trial to finalize engaging counsel who would need to prepare for trial.

Cloth requested adjournments of the pre-trial deadlines and a continuance of the scheduled trial on two separate occasions, but both requests were summarily denied. And although the case was filed just over one year before trial was set to commence, the discovery deadline had never been extended, there would have been little or no inconvenience to the district court and Plaintiffs if a continuance were granted, and Cloth submitted a declaration from counsel stating that they could only appear if a continuance was granted, the district court denied the request without any explanation. Those denials were an abuse of discretion and severely prejudiced Cloth, as he was left in a position where he could not defend himself at trial.

Moreover, Cloth should have never been forced to defend himself in this action to begin with. Prior to discovery, Cloth filed a motion to dismiss the fraud claim against him for lack of personal jurisdiction and for failure to state a claim, but the district court denied the motion. That was in error, since Cloth is a Canadian resident who has no connection to Florida, and the only justification that Plaintiffs asserted for suing him in Florida were the allegations that Cloth made misrepresentations through a *single* email and a *single* phone call to Plaintiffs' principal, who resides in Florida. But even if Florida's long-arm statute could broadly apply to such a claim, asserting jurisdiction over Cloth and forcing himself to defend himself in a jurisdiction that he could have never anticipated being hailed

into violated his fundamental right to due process. He should have been dismissed from this action for that reason alone.

Alternatively, the district court should have dismissed the fraud claim against him because it is premised on alleged misrepresentations that were either directly contradicted by the express terms of the parties' contracts—and therefore they could not have induced RSBVP's reliance as a matter of law—or they were simply non-actionable. The district court's denial of Cloth's motion to dismiss was therefore erroneous and should be reversed.

Finally, even if the aforementioned Orders were to stand—to be clear, they should not for the numerous reasons set forth herein—at a minimum, the jury's unconstitutionally excessive punitive damages award should be eliminated entirely or reduced substantially. Neither the jury nor the district court ever made any findings that Cloth's conduct was reprehensible, and his alleged conduct was not reprehensible. Indeed, RSBVP's fraud claim against Cloth asserts only an economic—not a physical—injury, RSBVP and its principal are far from financially vulnerable, and in the event the judgment of more than $6.5 million in compensatory damages stands, that personal judgment would be far more than enough punishment. A judgment of $13 million more in punitive damages is unreasonable and grossly excessive.

Accordingly, Cloth respectfully requests that the Court reverse the aforementioned district court Orders.

## ARGUMENT

### I. The District Court Reversibly Erred By Denying Cloth's Motion to Dismiss the Complaint for Lack of Personal Jurisdiction

It is well-settled that a district court may only exercise personal jurisdiction to the extent permitted by Florida's long arm statute and the requirements of due process. *Cortez v. Palace Resorts, Inc.*, 123 So. 3d 1085, 1091 (Fla. 2013).

In denying Cloth's motion to dismiss for lack of personal jurisdiction, the district court found that Plaintiffs' fraud claim fell within the scope of Fla. Stat. § 48.193(1)(a)(2)—which provides that a Florida court may exercise jurisdiction over a non-resident who "commit[s] a tortious act within this state"—and that exercising jurisdiction over Cloth would comport with the due process requirements of the Fourteenth Amendment. D.E. 40 at p. 7-12.

While, as the district court stated, Florida's long-arm statute can encompass tort claims arising from emails and phone calls into Florida, *see id.* at p. 8, "the mere proof of any one of the several circumstances enumerated in [Florida's Long–Arm Statute] as the basis for obtaining jurisdiction of nonresidents does not automatically satisfy the due process requirement of minimum contacts." *Melgarejo v. Pycsa Panama, S.A.*, 537 F. App'x 852, 859–60 (11th Cir. 2013) (citing *Venetian Salami Co. v. Parthenais*, 554 So.2d 499, 502 (Fla. 1989). That is because "the Due Process

Clause 'imposes a more restrictive requirement' than does Florida's Long–Arm Statute." *Id.*

The Due Process Clause "requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction not offend 'traditional notions of fair play and substantial justice.'" *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (quoting *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996)). "These requirements ensure that the defendant has fair warning that a particular activity may subject him to the jurisdiction of a foreign sovereign." *Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd*, 722 F. App'x 870, 879 (11th Cir. 2018) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)) (internal quotation omitted).

While personal jurisdiction can be either "general" or "specific," at the district court recognized, it is undisputed that there is no general jurisdiction over Cloth (*see* D.E. No. 40 at p. 9, n. 3), and the district court therefore analyzed whether there was specific jurisdiction over Defendants, including Cloth. *Id.* at p. 9. As the Supreme Court has stated, "[t]he inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 134 S. Ct. 1115, 1121, 188 L.Ed.2d 12 (2014) (internal quotation marks omitted). "The exercise of personal jurisdiction requires that 'the defendant's suit-related conduct .

. . create a substantial connection with the forum State." *Aviation One*, 722 F. App'x at 879 (citing *Walden*, 571 U.S. 277). "The focus is on contacts that the defendant himself creates with the forum state." *Id.* (internal quotation marks omitted).

In conducting this "minimum contacts" analysis, a court must look "to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285. "[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.*

The district court should have found that exercising jurisdiction over Cloth— a Canadian resident who never once met with Plaintiffs' principal in Florida, executed any agreements providing for jurisdiction over him in Florida, or engaged in any other conduct suggesting that he was availing himself of Florida's laws— would offend due process. Indeed, rather than alleging that Cloth committed a tort while in Florida, Plaintiffs merely asserted that Cloth made misrepresentations though a *single* email and a *single* phone call into Florida, "where Plaintiffs have their principal places of business and where their principal, Robert Harris, resides." D.E. 1 ¶¶ 11, 44-47.

And although Plaintiffs attempted to remedy their failure to even *allege* that Harris was *actually in Florida* when he received the purported email or phone call

by opposing Cloth's motion with a supplemental affidavit from Harris, (*see* D.E. 35-1), Cloth's alleged email and phone call into Florida were only in response to Harris' inquiries. *See* D.E. 1 ¶ 43 ("[W]hen RSBV's principal, Robert Harris, requested information pertaining to the status of payment," Cloth responded in a February 24, 2021 email); ¶ 47 (failing to provide any indication as to whether Cloth called Harris or vice versa).

The district court held, however, that it had specific jurisdiction over Defendants, such that due process was satisfied. Engaging in a three-part analysis, it found that (i) Plaintiffs' fraud claims arose out of or related to Cloth's calls and emails to Harris, who was in Florida and is a Florida resident; (ii) applying the reasoning of *SkyHop Technologies, Inc. v. Narra*, 58 F.4th 1211 (11th Cir. 2023), and *Tufts v. Hay*, 977 F.3d 1204 (11th Cir. 2020), Cloth "purposely availed" himself "of the laws of Florida" by allegedly making "repeated misrepresentations" on behalf of Creative Wealth to Harris while Harris was in Florida and acting as principal of the Florida-based Plaintiffs, "with whom Defendants had contracted"; and (iii) Florida's interest in the case, Plaintiffs' interest in obtaining convenient relief, and the judicial system's interest in resolving the dispute outweighs any burden on Defendants from having to litigate in Florida. *Id.* at p. 9-12.

This reasoning was incorrect for several reasons. *First*, Cloth did not "purposely avail" himself of the laws of Florida. That finding was based, at least in

part, on the district court's misapprehension that "*Defendants* had contracted" with Plaintiffs. *Id.* at p. 11 (emphasis added). It even held that "[t]he *Defendants* contracted with the Florida-based Plaintiffs" and that "because of these contracts, the contacts between the Defendants and the Plaintiffs were not fortuitous, but rather foreseeable." *Id.* (emphasis added).

But Cloth was *not* a party to the contracts which were solely between Plaintiffs and *Creative Wealth*. It is for that reason that Plaintiffs asserted their breach of contract claim only against Creative Wealth, not Cloth. *See* D.E. 1 at ¶¶ 52-57.

Cloth simply cannot be hailed into a Florida court by virtue of the contacts that Creative Wealth may have with Plaintiffs. *Walden*, 571 U.S. at 284 ("[T]he relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State.").

*Second*, the district court's reliance on *SkyHop* and *Tufts* was misplaced, as the nonresident defendants' respective connections with Florida in those cases were greater than those present here.

In *SkyHop*, one of the defendants, a California-based defendant entity named Indyzen entered into several software development and maintenance agreements with the Florida-based plaintiff. 58 F.4th at 1220. In connection with those services, an Indyzen executive made several trips to Florida to meet with one of the plaintiff's principals, and when plaintiff announced its intention to terminate the business

relationship, Indyzen's executive sent several emails to the plaintiff attempting to extort a large payment from plaintiff in exchange for releasing to plaintiff the software that rightfully belonged to the plaintiff. *Id.*

This Court therefore held that although a "plaintiff cannot be the only link between the defendant and the forum," under the circumstances, "Indyzen is subject to jurisdiction in Florida because of its own choices to contract with a Florida-based company and send emails to a Florida resident-the subject of SkyHops first claim." *Id.* at 1230. Moreover, with respect to whether Indyzen purposefully availed itself of Florida's laws, the Court held that:

> It was certainly foreseeable to Indyzen that SkyHop would feel the harm from its alleged threats in Florida, where SkyHop is based. And that is especially true here since Indyzen knew, from the outset, that it was in a partnership with a Florida-based company. Indeed, Narra made three separate trips to Florida to meet with Scotto. So Indyzen had reason to know that its decision and the ensuing emails could force it to defend against a lawsuit in Florida.

*Id.* at 1230.

*Tufts* is similarly inapposite. That case involved egregious circumstances of "repeated misrepresentations" into Florida by a North Carolina bankruptcy attorney to a Florida attorney in which the North Carolina attorney repeatedly falsely advised that a North Carolina bankruptcy court approved the Florida attorney to represent a certain debtor in bankruptcy. *Tufts v. Hay*, 977 F.3d 1204, 1211 (11th Cir. 2020).

And, the North Carolina attorney conceded that the Florida attorney may have been in Florida at the time of the communications.

Unlike the facts at issue in *SkyHop*, here, the connection between Cloth and Florida is far more attenuated. Significantly, Cloth was not a party to any contracts with Plaintiffs and he never met with Plaintiffs' principal in Florida. Moreover, Plaintiffs never even alleged that the Film Contracts—which, again, were solely between Plaintiffs and Creative Wealth—were negotiated in Florida or that they contemplated any activities taking place or services being provided in Florida.[6] And, although Plaintiffs are based in Florida and Harris was allegedly in Florida when Cloth made the alleged misrepresentations, the "[r]andom, attenuated, or fortuitous contact initiated by a Florida plaintiff does not satisfy the minimum contacts requirements." *Walack v. Worldwide Mach.*, 278 F. Supp. 2d 1358, 1368 (M.D. Fla. 2003) (citing *Sun Bank*, 926 F.2d at 1034); *see Green v. USF*, 772 F. Supp. 1258, 1262-63 (S.D. Fla. 1991). Moreover, unlike the nonresident in *Tufts* who made numerous fraudulent communications into Florida, Plaintiffs hinged the assertion of personal jurisdiction over Cloth on a *single* email and a *single* phone call to Harris (in response to Harris' inquiries), purportedly while Harris was in Florida. D.E. 1 ¶¶ 11, 44-47.

---

[6] In fact, the relevant Film Contracts provided for the non-exclusive jurisdiction of the Ontario courts. *See* D.E. 22-1 through 22-10, Participation Agreement § 17.

This Court's holding in *Micro Fin. Advisors, Inc. v. Coloumb*, Case No. 23-11062, 2023 WL 7156898, at *4 (11th Cir. 2023), is more instructive. There, it was undisputed that Florida's long-arm statute applied to a cause of action arising out of a nonresident defendant's alleged fraudulent "emails and calls" to plaintiff's executive in Florida and that the fraud claim related to those communications into Florida. *Id.* at *4-5.

Nevertheless, the Court held that asserting jurisdiction over the nonresident would violate due process because the plaintiffs could not show that the defendant purposely availed himself of Florida's laws. Distinguishing the facts from *SkyHop*, the Court held that "this litigation's connection to Florida is much more attenuated"—notwithstanding that, in *Micro*, unlike here, the nonresident defendant visited Florida—since Florida was not the focal point of the harm, and "Florida's tangential connection to this litigation is driven primarily by Micro's presence in Florida and not, as it must be, [the nonresident defendant's] actions." *Id.* at *4.

Similarly, in *Sun Bank, N.A. v. E.F. Hutton & Co.*, 926 F.2d 1030, 1032 (11th Cir. 1991), after the district court held a bench trial on issues of fraud, this Court held that the district court lacked personal jurisdiction over a non-resident sales representative who allegedly made misrepresentations in telephone calls to a Florida lender concerning the creditworthiness of the representative's client.

Although the Court found that that the calls satisfied Florida's long-arm statute, it held that exercising jurisdiction over the nonresident violated due process. 926 F.2d at 1034. The Court reasoned that (i) the nonresident's contacts with Florida, though not attenuated, were fortuitous; (ii) the nonresident entered into no contract or continuing relationship or obligation with the lender that would make it foreseeable that he could be hailed into court in Florida; and (iii) the nonresident defendant did not purposefully avail himself of the privilege of conducting activities in Florida. *Id.* Instead, it was the plaintiff that sought information on a potential loan who contacted the nonresident defendant, who then allegedly made fraudulent misrepresentations. *Id.* The Court therefore concluded that the nonresident defendant "lacked sufficient minimum contacts with Florida to support the district court's exercise of personal jurisdiction over him." *Id.*

Because Cloth similarly did not purposefully avail himself of the benefits of Florida's laws, does not have minimum contacts with Florida, and could not reasonably anticipate being sued in Florida, the district court should have found that exercising jurisdiction over Cloth would violate Cloth's right to due process.

Furthermore, given Cloth's lack of contacts with Florida, exercising personal jurisdiction over him offended traditional notions of fair play and substantial justice. Requiring Plaintiffs to litigate in Ontario would have been fair and just, given the non-exclusive forum selection clauses in the Film Contracts. *See* D.E. 22-1 through

22-10, Participation Agreement § 17. Because the burden on Cloth is the paramount consideration, and since Cloth lacked minimum contacts with Florida, the determination of "whether the burden on [Cloth] outweighs the other considerations [wa]s unnecessary." *Volt, LLC, v. Volt Lighting*, 369 F. Supp. 3d at 1241, 1249 (M.D. Fla. 2019)

For the foregoing reasons, this Court should reverse the district court's decision and hold that the Complaint should have been dismissed as against Cloth for lack of personal jurisdiction.

## II. The District Court Should Have Granted Cloth's Motion to Dismiss the Fraud Claim Against Him For Failure To State a Cause of Action

RSBVP's fraud claim alleged that Cloth fraudulently induced it to "invest substantial monies in *Pathway*" through representations (i) concerning the risk associated with and timing of the recoupments of the investments in the *Fables*, *Bubbles*, *HHH*, and *Monkey Man* Films and (ii) that *Pathway* had already been "greenlit" for five seasons. D.E. 1 ¶¶ 59-60, 62. Under Florida law, a plaintiff alleging a fraud claim must plead with particularity "'(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; and (3) an intention that the representation induce another to act on it; and (4) the consequent injury by the party acting in reliance on the representation.'" *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022) (citation omitted).

In denying Cloth's motion to dismiss the fraud claim, the district court held, *inter alia*, that the alleged misrepresentations were material because they "are the kinds of statements that an investor would rely upon to determine whether to invest in a new show, as the statements go to the timeline for the investor's returns on the investor's first round of investments and the strength of the new, potential investment." D.E. 40 at p. 4-5. Moreover, the Court held that Plaintiffs were permitted to "plead knowledge generally" and that it would accept the truth of Plaintiffs' allegations that at the time Cloth made his alleged statements, he knew they were false. *Id.* at p. 5-6. Finally, it held that Plaintiffs sufficiently alleged that Cloth intended for his misrepresentations to induce RSBVP to invest in *Pathway* and that RSBVP was thereby injured. *Id.* at p. 7.

The district court, however, disregarded that in light of the law applicable to claims of fraud, as well as the very terms of the agreements at issue, none of Cloth's alleged misrepresentations could form the basis of a fraud claim.

Plaintiffs alleged that, at the beginning of 2021—approximately eight months before the maturity date of any of the Term Sheets—Harris asked Cloth for an update on when payment on certain Film Contracts could be expected. D.E. 1 ¶ 43. According to Plaintiffs, on February 24, 2021, Cloth responded that the investments in *Fables*, *Bubbles*, and *HHH* carried "'zero' risk" and would be recouped by the third quarter of 2021—which would have been *ahead* of the repayment schedule set

forth in the respective Term Sheets.  *Id.* ¶¶ 44-45.  Cloth purportedly also told Harris that the *Monkey Man* investment would be repaid by late summer 2021.  *Id.* ¶ 46.

The only other alleged misrepresentation was Cloth's statement to Harris in a May 2021 phone call that the *Pathway* series "had already been 'greenlit' for five seasons and that Harris should therefore invest in that project."  *Id.* ¶ 47.

But none of those alleged representations are actionable.  With respect to Cloth's purported misrepresentations that the *Fables*, *Bubbles*, and *HHH* investments carried "'zero' risk" and would be recouped by the third quarter of 2021, those alleged statements were  explicitly contradicted by the agreements governing the relevant transactions, including the (i) "Source of Repayment" provision in the Term Sheets, which provides that the investment would be recouped from the film's gross receipts, "if any," (*see* D.E. 22-1 through 22-11, Term Sheet at p. 1); (ii) "Investor Representations and Warranties" provision in the relevant Term Sheets, through which RSBV represented that it "has relied on its own examination of the investment," including the "risks involved" and acknowledged that "it may be required to bear the financial risks of this investment for an indefinite period of time," (*see id.*, D.E. 22-4 through 22-7, Term Sheet at p. 2); and (iii) Participation Agreements, through which RSBV acknowledged "the risks inherent in making loans and/or equity investments," that Creative Wealth "ma[de] no[] representation or warranty as to the commercial release of the Picture or the amount of proceeds, if

any, to be received from exploitation of the Picture," and that "[t]here [wa]s no assurance that [RSBV] will earn a profit from or recoup its Participation." *See id.*, D.E. 22-1 through 22-10, Participation Agreement § 8(a).[7]

Similarly, any alleged misrepresentation that *Pathway* had been "greenlit" for five seasons—notwithstanding Cloth's alleged knowledge that it "had only been 'greenlit' for a single season" (D.E. 1 ¶ 47)—was directly contradicted by the actual terms of the *Pathway* Term Sheet. That agreement expressly provided that RSBVP was providing funds to Creative Wealth in connection with the "Project," which the uppercase, bolded title of the *Pathway* Contract defined as "FINANCING FOR THE FIRST SEASON OF THE SERIES ENTITLED 'PATHWAY.'" D.E. 22-11 at p. 1. Moreover, the *Pathway* Term Sheet explicitly states that the investment "shall be recouped and net profits paid from gross receipts generated by the *first season of the Project* …, if any." *Id.* at p. 2 (emphasis added).

The district court did not consider these facts, which contradict any notion that RSBVP could have been induced by these alleged misrepresentations to invest in

---

[7] As stated above, (supra n. 2), the authenticity of the parties' "relationship-forming" documents are central to Plaintiffs' claims and undisputed. Therefore, the district court was permitted to consider them on Defendants' motion to dismiss. This Court should similarly consider those pertinent agreements "because those contracts are central to Plaintiffs' claim, were attached to Defendant's motion to dismiss, and the contents of those contracts are not in dispute." *Kuchenmeister v. HealthPort Techs., LLC*, 753 F. App'x 794, 796–97 (11th Cir. 2018).

*Pathway*, stating that, under the Florida Supreme Court's holding in *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010), "Plaintiffs do not need to plead justifiable reliance in order to state a fraud claim under Florida law." D.E. 40 at 4.

But *Butler* did not abrogate the well-settled law that a party cannot assert a fraud claim based on alleged misrepresentations that contradict the express terms of a contract because "reliance on fraudulent misrepresentations is unreasonable *as a matter of law* where the alleged misrepresentations contradict the express terms of the ensuing written agreement." *Vital Pharms., Inc. v. Balboa Cap. Corp.*, No. 14-62469-CIV, 2016 WL 4479370, at \*7 (S.D. Fla. Aug. 25, 2016), *aff'd*, 806 F. App'x 884 (11th Cir. 2020) (emphasis in original) (quoting *Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283, 1295 (S.D. Fla. 2007)).

Said another way, "[a] party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract." *Advanced Marketing Systems Corp. v. ZK Yacht Sales,* 830 So. 2d 924, 928 (Fla. 4th DCA 2002) (quoting *Hillcrest Pacific Corp. v. Yamamura,* 727 So. 2d 1053, 1056 (Fla. 4th DCA 1999)); *GVK International Business Group, Inc. v. Levkovitz*, 2020 WL 4197407, at \*2 (Fla. 3d DCA July 22, 2020). "To hold otherwise is to invite contracting parties to make agreements of the kind in suit and then avoid them by simply taking the stand and swearing that they relied on some other statement." *GVK*, 2020 WL 4197407, at \*2 (internal citation and quotation

omitted).  A party may claim fraudulent inducement only if the "subject of" the inducing representation or omission "is not covered by the contract." *Id*.; *S&B Investments, LLC v. Motiva Enterprises, L.L.C.*, No. 03-61993, 2004 WL 3250306, at *5 (S.D. Fla. Dec. 6, 2004), or, stated differently, "relates to an issue that falls outside of" its terms.  *Larach v. Standard Chartered Bank Int'l (Americas) Ltd.*, 09-21178-CIV, 2011 WL 13173896 at *10 (S.D. Fla. June 7, 2011), *report and recommendation adopted by* 09-21178-CIV, 2011 WL 13174741 (S.D. Fla. Sept. 15, 2011).

Given that the contracts Plaintiffs entered into expressly contradict RSBVP's claim that it was induced by alleged misrepresentations concerning the lack of risk associated with the *Fables*, *Bubbles*, and *HHH* investments and that *Pathway* was "greenlit" for five seasons, Plaintiffs were barred as a matter of law from basing a fraudulent inducement claim on those purported misrepresentations. [8]

---

[8] RSBVP's claim that it may—during contract negotiations on *Pathway*—rely on its counterparty's alleged statements rather than the explicit terms of the contracts at issue contradicts this well-settled law.  The clear disclaimers in the *Fables*, *Bubbles*, and *HHH* Contracts contradict any notion that there was "zero" risk associated with RSBVP's investments, and the *Pathway* Contract makes no mention of RSBVP's reliance on any of Cloth's representations.  Harris had the means to discover the alleged falsity of Cloth's alleged misrepresentation that there was "zero" risk (*i.e.*, by simply reading the contracts he signed) and RSBVP nevertheless asserted that it relied on Cloth's alleged representation, which amounts to, at best, "puffing," "sales talk," or a "pure expression of opinion"—it "is not a misrepresentation of fact and cannot form the basis for a fraud action under Florida law." *S.K.Y. Mgmt.*, 2007 WL 9701121, at *4-5 (citing *White v. Crandall*, 143 So. 871, 877 (Fla. 1932)); *see Grimes v. Lottes*, 241 So. 3d 892, 896 (Fla. Dist. Ct. App. 2018).  Moreover, "[u]nder

Moreover, it is fundamental that "promises of future action," such as intent to perform under a contract, "are usually insufficient" to support a fraud claim. *Adler v. WestJet Airlines, Ltd.*, 31 F. Supp. 3d 1381, 1386 (S.D. Fla. 2014) (citing *Weaver v. State*, 981 So. 2d 508, 509 (Fla. Dist. Ct. App. 2008)). This is particularly true where the statement of intent to perform under prior, unrelated contracts, if true, would have required Creative Wealth to make payments to RSBV *before* the times allegedly required under the Term Sheets. *Compare* D.E. 1 ¶ 59 (alleging Cloth represented that the *Fables*, *Bubbles*, and *HHH* investments would be repaid "by the third quarter of 2021," and the *Monkey Man* investment would be "repaid by 'late summer' of 2021"), *with id.* ¶ 41 (alleging November 30, 2021 maturity date on *Fables* investment), *id.* ¶ 33 (alleging May 2022 maturity date on *Bubbles* investment), *id.*¶ 28 (alleging April 21, 2022 maturity date on *HHH* investment), *and id.* ¶¶ 18-20 (not specifying any maturity date on the *Monkey Man* investment).

Absent any actionable alleged misrepresentations, the district court should have granted Cloth's motion to dismiss the fraud claim. This Court should therefore reverse the district court's Order denying Cloth's motion for failure to state a claim.

---

Rule 9(b), if [RSBVP] had any possibility of stating a fraud claim from these statements [RSBVP] would have to allege specifically how a sophisticated investor would have relied upon such sales talk in entering into a multi-million dollar transaction like this one." *S.K.Y. Mgmt.*, 2007 WL 9701121, at *5. It cannot do so, given the clear, unambiguous disclaimers in the various contracts at issue in the action.

## III. The District Court Abused Its Discretion in Denying Cloth's Motion for a Continuance of Trial Without Explanation

There are four factors this Court considers when determining whether a lower court's denial of a motion for a continuance of trial constituted an abuse of discretion: *first*, whether the moving party was diligent in its efforts to ready its case prior to the date set for hearing; *second*, the likelihood that the need for a continuance would have been remedied if the continuance had been granted; *third*, the extent to which granting the continuance would have inconvenienced the district court and opposing party; and *fourth*, the extent to which the moving party might have suffered harm as a result of the district court's denial. *Romero v. Drummond Co.*, 552 F.3d 1303, 1320 (11th Cir. 2008) (citing *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1296 (11th Cir.2005)). Importantly, when a party has been "severely prejudiced" by a lower court's refusal to grant a continuance of trial, an abuse of discretion will be found. *Rink*, 400 F.3d at 1296 (citations omitted).

Here, the district court abused its discretion when it denied Cloth's motion for a 60-day continuance, thereby denying him the opportunity to secure representation and allow his counsel adequate time to prepare for trial. Each factor analyzed by this Court weighs in Cloth's favor. To be sure, while it is true that this Court has generally declined to reverse a district court's denial of a motion for a continuance, reversal is warranted here.

*First*, Cloth proceeded diligently throughout the case, having never sought an adjournment of the trial or pre-trial deadlines, or any discovery deadline, and he first sought a continuance more than a month before trial, before renewing the request again.[9] This case is therefore distinguishable from other cases in which the movant was inexcusably neglectful in seeking a continuance. *See Lans v. Stuckey*, 203 F. App'x 956, 960 (11th Cir. 2006) (District Court's decision to deny continuance affirmed where movant demonstrated an "extreme lack of diligence," and request for continuance was made after trial had begun); *Fore River, LLC v. Monahan*, No. 5:18-CV-409-OC-39, 2019 WL 13062724, at *2 (M.D. Fla. Sept. 13, 2019) ("It cannot be said that Appellant was diligent in seeking a continuance by waiting 7 days before trial to file a motion for continuance…"); *Martins v. Royal Caribbean Cruises, Ltd.*, 2018 WL 1072196, at *18 (S.D. Fla. Feb. 27, 2018) (motion for continuance denied where plaintiff indicated for weeks that she would be at trial then sought a continuance on the morning trial was set to begin). Here, Cloth filed the *pro se* Continuance Motion weeks before trial was set to begin (D.E. 93), and repeatedly made clear that he was not in a position to try this case without counsel. *See* D.E. 93, 116; May 1 Tr. 6:4-7:2; 8:11-12; 15:4-13. Critically, this was Cloth's

---

[9] The sole exception was a request for a 30-day stay of all proceedings which, Herrick sought in its motion to withdraw as counsel. D.E. 67. This request was granted by the District Court on February 12, 2024. (D.E. 71).

first request for a continuance, and the trial date had never previously been adjourned.

*Second*, granting a brief adjournment and continuance would have allowed Cloth to retain counsel and proceed at trial with representation. As stated in the Fried Declaration annexed to Cloth's Continuance Motion (which he filed *after* his initial informal request for a continuance was denied), Cloth's former counsel (Herrick) confirmed that Cloth and Herrick were in the process of resolving the outstanding fee issue and that, if the Court granted an adjournment that allowed Herrick to prepare for trial, Herrick would have reappeared and represented Cloth at trial. D.E. 93-1.

*Third*, neither the district court nor Plaintiffs would have been inconvenienced by a 60-day continuance. In fact, this action was commenced only 14 months earlier, and Plaintiffs themselves delayed in commencing the action by previously filing their claims in New York (in December 2022) before voluntarily withdrawing them and refiling in Florida. Furthermore, no additional discovery would have been needed during the 60-day continuance, the availability of witnesses and parties would not have been adversely affected, and no additional judicial resources would have been expended. *Cf. Sec. & Exch. Comm'n v. Levin*, 849 F.3d 995, 1005 (11th Cir. 2017) (third factor weighed against continuance where "[t]he district court had secured the services of an extra court reporter for the trial and had summoned fifty

potential jurors. Moreover, one of the SEC's witnesses was available only for a few days, so a week-long continuance might have prevented his testimony"); *Rance v. Rocksolid Granit USA, Inc.*, 489 F. App'x 314, 316 (11th Cir. 2012) (Defendants and court would have suffered "great inconvenience" from a continuance where the District Court had already pushed back the trial date more than once and tried to accommodate plaintiff's health problems when making scheduling decisions); *Gastaldi v. Sunvest Resort Communities, LC*, 709 F. Supp. 2d 1284, 1295 (S.D. Fla. 2010) (granting a continuance would have caused defendants inconvenience and required the reopening of expert discovery).

*Fourth*, Cloth suffered severe prejudice due to the district court's denial of his motion for a continuance. Critically, "denials have been held to cause prejudice where, for example, a party needed time to obtain new counsel . . . but, because of the denial, was required to proceed with unfamiliar counsel or none at all." *Gastaldi*, 709 F. Supp. 2d at 1296 (citing *Anderson v. Sheppard*, 856 F.2d 741, 748–49 (6th Cir.1988)); *Smith-Weik Mach. Corp. v. Murdock Mach. & Eng'g Co.*, 423 F.2d 842, 844 (5th Cir. 1970) ("In Anglo-American law, with trials based on the adversary system as the best means of arriving at a just and legal result, the interests of justice in this case required that both parties be represented by able counsel well informed on the facts and the pertinent law.").

Here, the district court was well aware that it would have been futile for Cloth to appear without legal representation on a complex, multi-million fraud claim against him, and it nevertheless denied the Continuance Motion without analysis or explanation. D.E. 104. Cloth was therefore left unable to defend himself.

To compound the matter, Plaintiffs' counsel even went so far as to brazenly tell the jury during closing argument that Cloth "didn't even care about showing up for his own trial. He is sued for millions of dollars and he just blows it off like it is no big deal. Mr. Cloth doesn't care about the lives that he has ruined. You heard Robert [Harris] tell you that people had to leave retirement and go back to work because Mr. Cloth stole their money. Mr. Cloth didn't care." (May 8 Tr. p. 22:8-13.) In urging the jury to grant punitive damages against Cloth—and it ultimately did so, awarding over $13 million—Plaintiffs' counsel stated:

> Mr. Jonelis: "Remember, as things currently stand, he hasn't felt punished or deterred. He didn't even bother to show up for this trial, which indicates he has a complete disregard for addressing the consequences of his actions and the losses he has caused to his investors."

*Id.* 33:23-34:2. It is therefore clear that Cloth suffered severe prejudice as a result of the district court's denial of Cloth's motion for a continuance of trial.

In sum, the district court abused its discretion by denying Cloth's motion for a continuance. If the district court can exercise personal jurisdiction over Cloth, this

Court should reverse and issue an Order providing Cloth with the opportunity to defend himself with counsel at a new trial.

## IV. The Jury's Award of $13 Million in Punitive Damages Was Excessive

The Supreme Court "has instructed courts reviewing punitive damages to consider (1) the degree of reprehensibility of the defendant's misconduct, (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award, and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 409, 123 S. Ct. 1513, 1515, 155 L. Ed. 2d 585 (2003) (citing *BMW of N. Am. v. Gore*, 517 U.S. 559, 575, 116 S. Ct. 1589, 1598 (1996)).

Here, the jury did not make any findings of fact concerning the "reprehensibility" of Cloth's alleged conduct and the district court did not make any findings of its own. Instead, the jury awarded $13 million in punitive damages against Cloth, which was nearly twice the amount of the $6,573,024.00 in compensatory damages that it awarded against him. D.E. 126. The district court then entered final judgment against Cloth without reviewing any of the three relevant guideposts referenced above. D.E. 133. The punitive damages award was unconstitutionally excessive and in error.

With regard to the first and "most important" guidepost—the degree of reprehensibility of the defendant's misconduct—a reviewing court must consider whether: (1) "the harm caused was physical as opposed to economic"; (2) "the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others"; (3) "the target of the conduct had financial vulnerability"; (4) "the conduct involved repeated actions or was an isolated incident"; and (5) "the harm was the result of intentional malice, trickery, or deceit, or mere accident." *State Farm*, 538 U.S. at 419.

Here, it is indisputable that the alleged fraudulent inducement merely caused RSBVP to invest in *Pathway*. And while RSBVP claims that it suffered economic harm due to the purported fraud, Cloth caused no physical harm or evinced a disregard of Harris' health or safety. Moreover, it is clear that Plaintiffs' principal, Harris, was far from financially vulnerable, as he admitted at trial that he previously invested nearly two million dollars with Creative Wealth in other films not at issue in this lawsuit, and he was fully paid back with substantial returns. May 7 Tr. at p. 77:19-25; p. 78:1-6. Nor were there any allegations that the conduct at issue involved "repeated actions." Finally, there were no findings (or evidence sufficient

to support a finding) that the alleged misrepresentations were made with any malice.[10] Accordingly, Cloth's conduct cannot be said to have been reprehensible.

Second, the Supreme Court has cautioned that a court should not treat the ratio of actual damages suffered to the punitive damages awarded as a "simple mathematical formula," particularly where the compensatory damages awarded are substantial. *Gore*, 517 at 559; *see also State Farm*, 538 U.S. at 425 ("When compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee."). "In sum, courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *Id.* at 426.

Here, given that the jury awarded over $6.5 million in compensatory damages against Cloth individually, the jury's additional award of $13 million in punitive damages was grossly excessive. A multi-million award against Cloth personally— which would fully restore RSBVP to the position it was in prior to his investment in *Pathway*—was punishment enough. *Allahar v. Zahora*, 59 F.3d 693, 697 (7th Cir. 1995) (agreeing with district court that awarding punitive damages would be

---

[10] To be sure, because the district court denied Cloth's *pro se* Continuance Motion— which prevented Cloth from securing counsel and thus, rendered his appearance at trial futile—Cloth was unable to present his myriad defenses to RSBVP's fraud claim, including the documentary evidence in support of such defenses.

excessive against individual who was already paying compensatory damages "out of his own pocket" since, while the court did not "condone [defendant's] behavior, the defendant "was a single individual with a single house to sell, not a large corporation or a rental agency"); *Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246, 1263–64 (Fla. 2006) ("[A]n award must be reviewed to ensure that it bears some relationship to the defendant's ability to pay and does not result in economic castigation or bankruptcy of the defendant."). Any additional amount—and certainly $13 million more—was unreasonable and excessive.

Finally, with regard to the third guidepost—the amount of punitive damages awarded in comparison to the civil penalties authorized or imposed in comparable cases—there are no comparable civil penalties other than those set forth in Fla. Stat. Ann. § 768.73. Nevertheless, because the claim against Cloth involves a purely economic tort asserted by a plaintiff who was not financially vulnerable, against an individual who—in the event the judgment stands—will already be required to pay millions of dollars out of pocket, the third guidepost—"which is accorded less weight in the reasonableness analysis than the first two guideposts," *Kemp v. Am. Tel. & Tel. Co.*, 393 F.3d 1354, 1364 (11th Cir. 2004)—should weigh in favor of eliminating or substantially reducing the punitive damages award.

## CONCLUSION

For the foregoing reasons, Cloth respectfully requests that the Court reverse the district court's Orders.

Dated: October 21, 2024

Respectfully submitted,

BERGER SINGERMAN LLP

By: */s/ Leonard K. Samuels*
Leonard K. Samuels
Florida Bar No. 501610
lsamuels@bergersingerman.com
W. Perry Hicks
Florida Bar No. 1050892
mcurtis@bergersingerman.com
East Las Olas Blvd., Suite 1500
Ft. Lauderdale, FL 33301
Telephone: (954) 525-9900

HERRICK, FEINSTEIN LLP

By: */s/ Samuel J. Bazian*
William R. Fried, Esq.
New York Bar No. 2166676
Samuel J. Bazian, Esq.
New York Bar No. 5300215
Two Park Avenue
New York, New York 10016
Telephone: (212) 592-1400

*Attorneys for Appellant Jason Cloth*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) as the brief contains 10,897 words, excluding those parts exempted by 11th Cir. Local R. 32-4.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) as this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

Dated: October 21, 2024   By: */s/ Samuel J. Bazian*
             Samuel J. Bazian

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified in the manner specified, either via transmission of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notice of Electronic Filing.

By: */s/ Samuel J. Bazian*
      Samuel J. Bazian