No. 24-12278

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

RSBV PATHWAY LLC,

*Plaintiff-Appellee*,

v.

JASON CLOTH,

*Defendant-Appellant.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO: 9:23-cv-80282-RLR
*(Robin Lee Rosenberg, U.S. District Judge;*
*Bruce E. Reinhart, U.S. Magistrate Judge)*

## ANSWER BRIEF OF APPELLEE

Scott N. Wagner
**BILZIN SUMBERG BAENA**
**PRICE & AXELROD LLP**
1450 Brickell Ave., Suite 2300
Miami, Florida 33131-7580
Tel.: (305) 350-7386
Email:  swagner@bilzin.com
Email:  eservice@bilzin.com

David B. Jonelis
**LAVELY & SINGER**
**PROFESSIONAL CORPORATION**
2049 Century Park East, Suite 2400
Los Angeles, California 90067
Tel.:  (310) 556-3501
Email:  djonelis@lavelysinger.com

*Counsel for Plaintiff-Appellee RSBV Pathway LLC*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Local Rule 26.1, Appellee, RSBV Pathway LLC ("RSBVP"), states that it is a privately owned entity.  RSBVP's parent entity is Robert Scot Building Venture LLC.  No publicly held corporation owns 10% or more of RSBVP's stock.  No publicly traded company has an interest in the outcome of this case or appeal.

Persons and entities that undersigned counsel believes, in good faith, have an interest in the outcome of this appeal are:

- Bazian, Samuel J. – Former Trial Counsel for Jason Cloth and Creative Wealth Media Finance Corp., and Current Appellate Counsel for Jason Cloth

- Berger Singerman LLP – Former Trial Counsel for Jason Cloth and Creative Wealth Media Finance Corp., and Current Appellate Counsel for Jason Cloth

- Bilzin Sumberg Baena Price & Axelrod LLP – Trial Counsel for RSBVP and Robert Scot Building Venture LLC, and Current Appellate Counsel for RSBVP

- Cloth, Jason – Appellant

- Creative Wealth Media Finance Corp. – Defendant

- Curtis, Marianne – Former Trial Counsel for Jason Cloth and Creative Wealth Media Finance Corp.

- Drescher, Ilana Arnowitz – Former Trial Counsel for RSBVP and Robert Scot Building Venture LLC

- Fried, William R. – Former Trial Counsel for Jason Cloth and Creative Wealth Media Finance Corp., and Current Appellate Counsel for Jason Cloth

- Harris, Robert – Principal of RSBVP and Robert Scot Building Venture LLC

- Herrick Feinstein LLP – Former Trial Counsel for Jason Cloth and Creative Wealth Media Finance Corp., and Current Appellate Counsel for Jason Cloth

- Hicks, William Perry –Current Appellate Counsel for Jason Cloth

- Jonelis, David B. – Trial Counsel for RSBVP and Robert Scot Building Venture LLC, and Current Appellate Counsel for RSBV Pathway

- Koutsodendris, Stephanie – Former Trial Counsel for RSBVP and Robert Scot Building Venture LLC

- Lavely & Singer P.C. – Trial Counsel for RSBVP and Robert Scot Building Venture LLC, and Current Appellate Counsel for RSBV Pathway

- Leeker, Kelsey J. – Trial Counsel for RSBV Pathway and Robert Scot Building Venture LLC

- Reinhart, Bruce E. – United States District Court Magistrate Judge

- Robert Family Trust

- Robert Harris Family Trust

- Robert Harris Trust

- Robert Scot Building Venture LLC –Plaintiff

- Rosenberg, Robin L – United States District Court Judge

- RSBV Pathway LLC – Appellee

- Sakona, Shalia – Former Trial Counsel for RSBVP and Robert Scot Building Venture LLC

- Samuels, Leonard K.– Former Trial Counsel for Jason Cloth and Creative Wealth Media Finance Corp., and Current Appellate Counsel for Jason Cloth

- Wagner, Scott N.– Trial Counsel for RSBVP and Robert Scot Building Venture LLC, and Current Appellate Counsel for RSBV Pathway

*/s/ Scott N.  Wagner*
Scott N. Wagner

*Counsel for Plaintiff-Appellee*
*RSVB Pathway, LLC*

## STATEMENT REGARDING ORAL ARGUMENT

Appellee RSBV Pathway LLC respectfully request that this Court deny Appellant Jason Cloth's request for oral argument. Oral argument is unnecessary in this case because the issues presented are straightforward, the governing law is well-settled, and the parties' briefs comprehensively address all pertinent legal and factual matters. Oral argument would not materially assist the Court in reaching a just and timely decision.

# TABLE OF CONTENTS

**Page**

Certificate of Interested Persons
and Corporate Disclosure Statement ...........................................................C-1

Statement Regarding Oral Argument ....................................................... i

Table of Authorities ................................................................. iv

Statement of the Issues.................................................................1

Statement of the Case.................................................................2

Summary of the Argument..............................................................13

Argument.................................................................17

I.     The District Court Has Personal Jurisdiction Over Cloth ............................ 17

     A.     RSBVP's Fraud Claim "Arises out of or Relate[s] to" Cloth's
Contact with Florida................................................................ 19

     B.     Cloth "Purposely Availed" Himself of Florida With His
Tortious Contacts ................................................................ 21

     C.     Exercising Jurisdiction Over Cloth Comports With Traditional
Notions of Fair Play and Substantial Justice...................................... 28

II.     RSBVP Stated a Claim for Fraud Against Cloth ......................................... 31

III.     The District Court Did Not Abuse Its Discretion in Denying Cloth's
Motion for Continuance of Trial ................................................ 37

     A.     Cloth was Not Diligent........................................................ 38

     B.     Cloth Took a Gamble and Lost ....................................................... 39

     C.     RSBVP Would Have Been Prejudiced by a Sixty-Day
Continuance........................................................................ 44

     D.     RSBVP's Closing Arguments Were Appropriate and Any
Issues Were Not Preserved................................................. 46

IV.   The Jury's Award of Punitive Damages was Appropriate ........................... 46

     A.   Guidepost 1 – Reprehensibility ........................................................ 48

     B.   Guidepost 2 – Ratio ........................................................................ 50

     C.   Guidepost 3 – Comparable Cases ................................................... 53

Conclusion ........................................................................................................ 54

Certificate of Compliance ................................................................................ 56

Certificate of Service ....................................................................................... 56

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adler v. WestJet Airlines, Ltd.*,
　31 F. Supp. 3d 1381 (S.D. Fla. 2014) .............................................16, 34, 35, 36

*Advanced Mktg. Sys. Corp. v. ZK Yacht Sales*,
　830 So. 2d 924 (Fla. 4th Dist. Ct. App. 2002)...................................................33

*Allahara v. Zahora*,
　59 F.3d 693, 697 (7th Cir. 1995) ................................................................52, 53

*BGW Design Ltd., Inc. v. Serv. Am. Corp.*,
　No. 10-20730-CIV, 2010 WL 5014289 (S.D. Fla. Dec. 3, 2010)...............35, 36

*BMW of N. Am., Inc. v. Gore*,
　517 U.S. 559 (1996).............................................................................................48

*Calder*, 465 U.S. at 1487, 104 S.Ct. 1401 .............................................................29

*Calder v. Jones*,
　465 U.S. 783 (1984).............................................................................................21

*Citibank, N.A. v. Data Lease Fin. Corp.*,
　828 F.2d 686 (11th Cir. 1987) ............................................................................35

*Clinton v. Jones*,
　520 U.S. 681 (1997).............................................................................................43

*Cote v. Philip Morris USA, Inc.*,
　985 F.3d 840 (11th Cir. 2021) ...............................................13, 48, 50, 51, 52

*Del Valle v. Trivago GMBH*,
　56 F.4th 1265 (11th Cir. 2022) ....................................................................22, 29

*E. Prop. Dev. LLC v. Gill*,
　558 F. App'x. 882 (11th Cir. 2014)....................................................................50

*Ford Motor Co. v. Montana Eighth Judicial Dist. Court*,
　592 U.S. 351 (2021).......................................................................................19, 22

*Gonzalez v. Batmasian*,
  725 F. App'x. 861 (11th Cir. 2018) .................................... 13, 37, 38, 39, 40, 42

*Kerrivan v. R.J. Reynolds Tobacco Co.*,
  953 F.3d 1196 (11th Cir. 2020) .................................................................50

*Licciardello v. Lovelady*,
  554 F.3d 1280 (11th Cir. 2009) ...................................................25, 28, 29, 30

*Louis Vuitton Malletier, S.A. v. Mosseri*,
  736 F.3d 1339 (11th Cir. 2013) ...................................................19, 28, 29, 30

*McGinnis v. American Home Mortgage Servicing, Inc.*,
  901 F.3d 1282 (2018).............................................................................50, 51, 52

*Micro Financial Advisors, Inc. v. Coloumb*,
  23-11062, 2023 WL 7156898 (11th Cir. Oct. 31, 2023)......................25, 26, 27

*Myers v. Cent. Fla. Inv., Inc.*,
  592 F.3d 1201 (11th Cir. 2010) ...........................................................48, 49, 50

*Romero v. Drummond Co., Inc.*,
  552 F.3d 1303 (11th Cir. 2008) .........................................................................42

*Royal Typewriter Co., a Div. of Litton Bus. Sys., Inc. v. Xerographic
  Supplies Corp.*,
  719 F.2d 1092 (11th Cir. 1983) .........................................................................35

*Rubinstein v. Yehuda*,
  38 F.4th 982 (11th Cir. 2022) ............................................................................49

*Ruiz v. Wing*,
  991 F.3d 1130 (11th Cir. 2021) .........................................................................46

*Sec. & Exch. Comm'n v. Levin*,
  849 F.3d 995 (11th Cir. 2017) ...........................................................................44

*Sepulveda v. Burnside*,
  432 F. App'x. 860 (11th Cir. 2011) ...................................................................49

*Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*,
  710 F.2d 678 (11th Cir. 1983) ...........................................................................53

*SkyHop Techs., Inc. v. Narra*,
  58 F. 4th 1211 (11th Cir. 2023)
  ................................................. 12, 14, 17, 19, 20, 21, 22, 23, 24, 25, 27, 28, 29

*State Farm*, 538 U.S. at 425, 123 S. Ct. at 1524.................................51, 52

*Sun Bank, N.A. v. E.F. Hutton & Co.*,
  926 F.2d 1030 (11th Cir. 1991) .............................................25, 26, 27

*Tufts v. Hay*,
  977 F.3d 1204 (11th Cir. 2020) ........................ 18, 19, 20, 22, 23, 24, 25, 27, 28

*TXO Prod. Corp. v. All. Res. Corp.*,
  509 U.S. 443 (1993).................................................................48

*U.S. E.E.O.C. v. W&O, Inc.*,
  213 F.3d 600 (11th Cir. 2000) ....................................................49

*United States ex rel. Jacobs v. JP Morgan Chase Bank, N.A.*,
  113 F.4th 1294 (11th Cir. 2024) ..................................................12

*United States v. Baker*,
  432 F.3d 1189 (11th Cir. 2005) ..................................................44

*United States v. Barrentine*,
  591 F.2d 1069 (5th Cir. 1979) ...................................................44

*United States v. Bergouignan*,
  764 F.2d 1503 (11th Cir. 1985) ..................................................42

*United States v. Rey*,
  811 F.2d 1453 (11th Cir. 1987) ...................................................7

*United States v. Walford*,
  295 F. Appx. 354 (11th Cir. 2008) ...............................................44

*United States v. Zangwill*,
  197 Fed. Appx. 888 (11th Cir. 2006).........................................44, 45

*Venetian Salami Co. v. Parthenais*,
  554 So. 2d 499 (Fla. 1989) .......................................................17

*Walden v. Fiore*,
    571 U.S. 277 (2014)......................................................................20, 21

*Wammock v. Celotex Corp.*,
    835 F.2d 818 (11th Cir. 1988) ...............................................47

## STATUTES

Section 768.73, Fla. Stat. ..........................................................53

Section 48.193, Fla. Stat. ..........................................6, 8, 9, 10, 18

## STATEMENT OF THE ISSUES

Whether the District Court properly exercised personal jurisdiction over Cloth, a Canadian resident, given his deliberate and tortious acts directed into Florida made to a Florida resident (while in Florida), who is the principal of Appellant RSBVP, a Florida entity, satisfying the requirements of due process.

Whether the District Court correctly denied Cloth's motion to dismiss RSBVP's fraud claim, where the Complaint satisfied the requirements of Federal Rule of Civil Procedure 9(b) and Cloth's misrepresentations constituted actionable fraud under applicable law.

Whether the District Court appropriately exercised its discretion in denying Cloth's motion for a continuance of trial, given Cloth's lack of diligence, the ample opportunities to re-engage his prior counsel or hire new counsel, the District Court's repeated admonitions that it would not grant continuances on behalf of counsel who had not appeared in the case, and the inconvenience and prejudice to RSBVP if the continuance were granted.

Whether the amount of the jury's $13 million punitive damages award—a 2:1 ratio compared to the compensatory damages award—comported with constitutional requirements.

## STATEMENT OF THE CASE

Cloth's statement of the case is incomplete and misleading. The following statement fills in the gaps left by Cloth's omissions and corrects Cloth's misstatements.

## Factual Background

Plaintiff Robert Scot Building Venture LLC ("RSBV") and Plaintiff-Appellee RSBV Pathway LLC ("RSBVP") are Florida limited liability companies with their principal places of business in Jupiter, Florida. D.E. 1 ¶¶ 6-7; D.E. 35-1 ¶¶ 3-4. Robert Harris, the principal of both RSBV and RSBVP, is and was a Florida resident at all times relevant to this appeal. D.E. 1 ¶ 11; D.E. 35-1 ¶¶ 2, 5-8, 17. Defendant Creative Wealth Media Finance Corp. ("Creative Wealth") is a Canadian corporation. D.E. 1 ¶ 8; D.E. 22 ¶ 3. Defendant-Appellant Jason Cloth ("Cloth"), a Canadian citizen, was the principal and managing partner of Creative Wealth. D.E. 1 ¶¶ 3, 8-9; D.E. 22 ¶ 1.

Cloth is an established film and television producer with decades of experience and numerous well-known titles to his credit. May 7 Tr. 76:16-77:8. He used Creative Wealth as an entity through which he raised money for purported television and film projects. May 7 Tr. 75:11-15. From July 2019 to May 2021, RSBV entered into a series of agreements with Creative Wealth for the production of seven films: *Ghostbusters, Monkey Man, Gossamer, Hailey and the Hero Heart*

("HHH"), *Bubbles Hotel, Young Bear Grylls,* and *Fables* (collectively, the "Term Sheets"). D.E. 1 ¶¶ 15-42; D.E. 22-1 – 10.[1] RSBV loaned Creative Wealth millions of dollars, and in turn, was promised the return of its principal and interest thereon. *Id.* In entering into the Term Sheets, Harris, on behalf of RSBV, negotiated directly with Cloth. May 7 Tr. 75:11-15, 78:14-21, 80:1-21.

In early 2021, Harris asked Cloth about the payment status of the monies loaned under the Term Sheets. D.E. 1 ¶ 43; D.E. 127-1. Cloth made repeated false assurances to Harris both over the phone and via email, that payment was forthcoming as well as other misrepresentations. D.E. 1 ¶¶ 43-47; D.E. 127-1 – 9.

In a February 24, 2021 email, Cloth told Harris that the *Fables*, *Bubbles*, and *HHH* Loans would be repaid "worst case" scenario by the third quarter of 2021. D.E. 1 ¶ 44; D.E. 127-1. In a separate February 24, 2021 email, Cloth told Harris that there was "zero" risk associated with the *Fables*, *Bubbles*, and *HHH* Loans. D.E. 1 ¶ 45; D.E. 127-2. In another February 24, 2021 email, Cloth told Harris "that the MM [Monkey Man] Loan would be repaid by 'late summer' of 2021 at the latest." D.E. 1 ¶ 46; D.E. 127-2. Based on the actual status of the corresponding films, Cloth knew at the time he made these representations that those loans would

---

[1] Cloth signed the Terms Sheets on behalf of Creative Wealth. D.E. 22-1 – 10.

not be timely repaid.  D.E. 1 ¶¶ 44-46; May 7 Tr.  90:11-16, 95:2-10, 97:3-13, 100:9-13; 104:1-5.

Around the beginning of May 2021, Cloth told Harris on the phone and by email that a television series titled *Pathway* had already been "greenlit" for five seasons as a further inducement to entice Harris to invest in that project.  D.E. 1 ¶ 47; D.E. 127-5; May 7 Tr.  104:6-105:6, 105:20-107:9, 117:4-16, 118:2-4.  However, at the time, *Pathway* had only been "greenlit" for a single season.  D.E. 1 ¶ 47; May 7 Tr.  121:8-12.  Cloth also told Harris that he would be the only investor in *Pathway* and would not have to share the returns with any other investor despite the fact that Cloth was actually taking additional investments from others for *Pathway*.  May 7 Tr.  119:7-119:23; 121-18-122:22.

After these false representations from Cloth, RSBVP and Creative Wealth entered into a term sheet for the financing of the production of *Pathway* on May 19, 2021 (the "*Pathway* Term Sheet").  D.E. 1, ¶ 49; D.E. 22-11.  Under the *Pathway* Term Sheet, RSBVP provided financing for the *Pathway* project in the amount of $6,573,024.  D.E. 1 ¶ 50; D.E. 22-11.  In return, RSBVP was promised a return of its investment plus 15% of the gross receipts of the project as well as an additional portion of the net profit participation.  D.E. 1 ¶¶ 50-51; D.E. 22-11; D.E. 127-9.

To date, RSBV and RSBVP have not received any repayment whatsoever from Creative Wealth or Cloth for any of these investments. May 7 Tr. 83:4-18, 104:1-5, 122:23-25, 123:3-6.

**Procedural History**

On February 23, 2023, RSBV and RSBVP filed a complaint asserting breach of contract against Creative Wealth (Count I) and fraud against Cloth (Count II) (the "Complaint"). *See generally* D.E. 1. Count I was based on Creative Wealth's failure to uphold its obligations under the Term Sheets and the *Pathway* Term Sheet. *Id.* at ¶¶ 52-57. Count II was in respect of the *Pathway* project only. *Id.* at ¶¶ 58-65.

The Complaint alleged that Cloth was a citizen of Canada "who transacts business in the State of Florida and owns real property in the State of Florida." D.E. 1 ¶ 9. RSBVP further alleged that the District Court had personal jurisdiction over Cloth because he purposefully directed the fraudulent misrepresentations into Florida. D.E. 1 ¶ 11; *see also* D.E. 35-1.

RSBVP detailed the misrepresentations Cloth made to Harris to induce Harris to invest in the *Pathway* project. D.E. 1 ¶¶ 43-47; *see also* D.E. 35-1. Harris subsequently submitted a declaration attesting to the relevant facts. D.E. 35-1.

On May 12, 2023, Cloth and Creative Wealth, through their counsel, Herrick, Feinstein LP ("Herrick") and Berger Singerman LP ("Berger"), moved to dismiss

the Complaint. D.E. 21. Cloth argued that the District Court lacked personal jurisdiction over him and that RSBVP failed to state a claim for fraud. *Id.*

On July 10, 2023, the District Court denied Cloth's motion to dismiss ("Order Denying Dismissal"). D.E. 40. Specifically, the District Court found that RSBVP stated a fraud claim against Cloth based on the several misrepresentations made via phone and emails to Harris, a Florida resident, while he was in Florida—and as the representative of RSBVP, a Florida entity. *Id.* The District Court found that Cloth's misrepresentations were material because "[t]hese statements are the kinds of statements that an investor would rely upon to determine whether to invest in a new show, as the statements go to the timeline for the investor's returns on the investor's first round of investments and the strength of the new, potential investment" and that Cloth knew these representations were false at the time he made them. *Id.* Finally, the District Court found that RSBVP sufficiently pled that it relied upon and was injured by Cloth's misrepresentations, which induced it to invest more than $6,000,000 with Creative Wealth and Cloth. *Id.*

The District Court further determined that this conduct satisfied section 48.193(1)(a)(2) of Florida's long-arm statute, related to tortious acts. *Id.* The District Court then found that exercising personal jurisdiction over Cloth comported with constitutional requirements under the Due Process Clause. *Id.*

Pursuant to a May 31, 2023 order, the District Court scheduled trial to begin during the four-week trial period commencing on May 6, 2024 ("Trial Order"). D.E. 32. Discovery proceeded after the entry of the Order Denying Dismissal.[2] Among other discovery exchanged between the parties, four depositions were taken in the case, including of Harris and Cloth. *E.g.*, D.E. 117, 118, 119.

Herrick and Berger filed a motion for leave to withdraw as counsel of record for Creative Wealth on December 21, 2023, because of bankruptcy-related issues under Canadian law. D.E. 51 and 51-1. The District Court granted the motion on December 22, 2023. D.E. 52. Substitute counsel never appeared on behalf of Creative Wealth. *See generally* Docket. A clerk's default was entered against Creative Wealth on January 30, 2024. D.E. 68. On June 21, 2024, the District Court entered a final judgment against Creative Wealth, which has not been appealed. D.E. 132; *see generally* Docket.[3]

On February 6, 2024, separate from their withdrawal as Creative Wealth's counsel, Herrick and Berger moved to withdraw from representing Cloth. D.E. 67 and 67-1. The motion, which was notably filed after all relevant discovery had been

---

[2] Cloth claims that "fact [] discovery deadlines were never extended." I.B. 12. This is not true. On January 9, 2024, Cloth's Counsel filed a Joint Notice of Extension of Fact Discovery Deadline. D.E. 57.

[3] *See United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987) ("A court may take judicial notice of its own records and the records of inferior courts.").

taken and after all discovery deadlines had already passed, and on the day that the summary judgment deadline expired, presented two bases for the request to withdraw: (i) Cloth owed substantial legal fees and (ii) the representation of Cloth had "been rendered unreasonably difficult by [Cloth] for independent reasons," which the motion did not explain. D.E. 32, 57, 67 and 67-1. Cloth's counsel requested a thirty-day stay of proceedings for Cloth to obtain new counsel. D.E. 67 and 67-1. On February 12, 2024, the District Court entered an order allowing Cloth's counsel to withdraw and granted the thirty-day stay. D.E. 71. Neither Cloth nor his counsel requested that any deadlines be extended. D.E. 67 and 67-1. However, the District Court *sua sponte* extended the mediation deadline to account for the thirty-day stay. D.E. 71.

On March 6, 2024, the District Court ordered Cloth to file a notice of his intent to proceed. D.E. 74. On March 14, Cloth filed a declaration in support of his "intent to proceed defending the Complaint herein against me personally . . . ." D.E. 76. The declaration made no mention of any purported hardship that would be incurred by Cloth in connection with his defense. *Id.*

Following a status conference on March 20, 2024, which Cloth attended and at which the District Court inquired whether Cloth had secured new counsel, the District Court entered an order setting and resetting certain deadlines. D.E. 79. In this order, the District Court provided modest extensions to several pre-trial

deadlines to give Cloth even more time to retain counsel—and to allow that counsel to participate in required pre-trial exchanges.  D.E. 79; *see also* D.E. 32.  The District Court further directed Cloth to "provide a Notice of whether he has retained counsel" by April 3, 2024.  D.E. 79.  The District Court made clear that "[e]ven if new counsel is retained, the Court will not reset any expired deadlines." *Id.*

On April 3 and 4, 2024, Cloth emailed the District Court claiming that he was in discussions with Herrick to have them re-appear in the litigation.  D.E. 87 and 85.  Cloth further noted that he had "production commitments out of the country for a good piece of May." D.E. 85.  Cloth inquired if the District Court would "consider an adjournment if we file a motion for a continuance".  *Id.*

On April 5, 2025, the District Court entered an order, construing Cloth's April 4 email as a motion to continue the upcoming deadlines.  D.E. 84.  The District Court admonished that it "will not extend deadlines on behalf of counsel who have not made an appearance" and denied Cloth's request.  *Id.*

In the same time frame, Cloth proceeded to disregard several pre-trial deadlines that required joint submissions.  D.E. 96 and 96-1.

In a letter filed April 24, 2024, Cloth again requested an adjournment of the trial date and for the Court to "extend" several deadlines that had already passed ("Motion for Continuance").  D.E. 93.  Cloth explained that he was unable to timely pay his counsel's invoices.  *Id.*  Cloth further detailed that Herrick was willing to re-

appear in the case if he resolved his financial issues with the firm but **only if** the District Court provided additional time to prepare for trial. *Id.* Lastly, Cloth reiterated that he would be "out of the country for the Cannes Film Festival" in May. *Id.* Cloth requested a sixty-day extension of the deadlines and trial. *Id.*

Cloth included a declaration of William Fried, counsel at Herrick, ("Herrick Declaration") in support of his April 24 Request. D.E. 93-1. Counsel purported to summarize the financial reasons for Herrick's withdrawal as Cloth's counsel (but made no mention of the previously stated reason that the "representation had been rendered unreasonably difficult by [Cloth]") and informed the District Court that Herrick would be willing to re-appear and represent Cloth at trial upon two conditions: (i) Cloth's resolution of his outstanding fees and (i) the entry of an order by the District Court adjourning all dates in the Trial Order and trial by at least 60 days. *Id.* Notably, the declaration did not indicate that Herrick had any expectation of when it would actually be paid. It just vaguely noted that the resolution was "in process" and payment of the outstanding fees would satisfy one of the two conditions. *Id.* (emphasis added).

The District Court entered an order requiring RSBVP to respond to Cloth's Motion for Continuance. D.E. 95. RSBVP complied and explained, among other things, that it would be prejudiced by a continuance because (i) its counsel had already spent weeks preparing for trial and meeting the District Court's deadlines

and (ii) a later trial date could severely hamper RSBVP's ability to ultimately collect any judgment against Cloth and Creative Wealth, given the dozens of lawsuits both faced in the United States and Canada for failing to pay debts and satisfy obligations. *Id.* On April 29, 2024, the District Court entered an order denying Cloth's Motion for Continuance and ordered the parties to appear remotely at calendar call on May 1, 2024. D.E. 104.

At the May 1, 2024 calendar call, Cloth again raised his request for an adjournment, claiming that it would not prejudice RSBVP. May 1 Tr. 6:4-8. The District Court responded "I understand your position, and **I have taken all of the factors under consideration in making my determination that the case would proceed on Monday**." *Id.* at 6:9-11 (emphasis added).

Trial proceeded from May 7 through May 8, 2024. The District Court informed the jury that Cloth had exercised his right not to attend trial. May 7 Tr. 13:21-22, 54:24-55:1.[4] RSBVP presented evidence to the jury in support of its claim in the form of direct testimony of Harris, deposition testimony of Cloth, deposition testimony from Aaron Gilbert, direct testimony from Kathryn Arnold, a qualified

---

[4] There is no support for Cloth's characterization that the District Court "advised the jury that Cloth simply did not wish to attend the trial." I.B. 16. The record reflects that the District Court properly complied with Eleventh Circuit rules when informing the jury that Cloth was not attending trial.

expert on the entertainment industry, and several documents, including Cloth's misrepresentations to Harris via email. *See generally* May 7 and 8 Tr.; D.E. 127-1 –9. After the presentation of evidence, the District Court provided instructions to the jury. D.E. 125; May 8 Tr. 4:5-15:22. In closing, RSBVP's counsel noted to the jury that Cloth did not attend trial. May 8 Tr. 22:8-10. No objections were raised to RSBVP's case or the District Court's jury instructions during the trial. *See generally* May 7 and 8 Tr.

On May 8, 2024, the jury entered a verdict against Cloth for fraud and awarded RSBVP compensatory damages of $6,573,024 and punitive damages of $13,000,000. D.E. 126. The District Court entered a Final Judgment against Cloth reflecting the jury's verdict on June 20, 2024. D.E. 133. Cloth has not obtained a supersedeas bond to stay execution of the Final Judgment pending resolution of this appeal. *See generally* Docket.

## Standards of Review

This Court reviews an order denying a motion to dismiss for lack of personal jurisdiction *de novo* and accepts the allegation in the complaint as true. *E.g.*, *SkyHop Techs., Inc. v. Narra*, 58 F. 4th 1211, 1222 (11th Cir. 2023). This Court also reviews decisions on a motion to dismiss a fraud claim *de novo*. *E.g.*, *United States ex rel. Jacobs v. JP Morgan Chase Bank, N.A.*, 113 F.4th 1294, 1299 (11th Cir. 2024).

A district court's decision regarding a request for a continuance, including of trial, is reviewed for abuse of discretion. *Gonzalez v. Batmasian*, 725 F. App'x. 861, 865 (11th Cir. 2018). The denial of a request for a continuance does not constitute an abuse of discretion unless it is "arbitrary and unreasonable and severely prejudices the moving party." *Gonzalez*, 725 F. App'x. at 865.

There is a *de novo* review of whether the jury's award of punitive damages award comports with constitutional boundaries. *E.g.*, *Cote v. Philip Morris USA, Inc.*, 985 F.3d 840, 846 (11th Cir. 2021).

## SUMMARY OF THE ARGUMENT

The District Court's orders and the jury's verdict should be affirmed in all respects. Cloth's positions on appeal are based on a web of misleading arguments that amount to revisionist history of the record and misapplication of this Circuit's precedent. The law and the record support the District Court's determinations that Cloth now challenges.

The District Court properly exercised personal jurisdiction over Cloth. RSBVP's fraud claim against Cloth arises from misrepresentations Cloth made to RSBVP's principal, Robert Harris.

Cloth only contends that exercising jurisdiction over him offended the mandates of the Due Process Clause. Cloth is wrong.

The record demonstrates that Cloth directed his fraudulent statements to an individual he knew was a Florida resident and present in Florida. He also knew that Harris was the principal of RSBVP, a Florida entity. This Court has routinely found that similar situations establish the requisite connection among the nonresident defendant, forum, and litigation. The District Court correctly concluded that RSBVP's claim against Cloth arose from Cloth's contacts with Florida.

Cloth's actions also provided more than a sufficient basis for the District Court to conclude that Cloth purposefully availed himself of the forum. Cloth purposefully conveyed to Harris that his prior investments would be repaid and that the *Pathway* series was "greenlit" for five seasons, when he knew those statements were false. Cloth's communications to Harris and RSBVP in Florida were not "random, attenuated, or fortuitous" and his position on appeal flies in the face of this Court's precedent that "[a] nonresident defendant's **single** tortious act in the forum state can satisfy the effects test, even if the defendant lacks any other contacts with the forum state." *SkyHop*, 58 F.4th at 1230 (emphasis added).

Exercising personal jurisdiction over Cloth comported with the traditional notions of fair play and substantial justice. Cloth did not— and cannot— demonstrate how litigating in Florida would unduly burden him. Moreover, Florida has a strong interest in affording its resident a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida.

Accordingly, the District properly exercised jurisdiction over Cloth.

Next, the District Court correctly found that RSBVP stated a claim for fraud against Cloth. Cloth's contentions that the District Court erred because it disregarded the "very terms of the agreements at issue" and ignored the applicable law are wrong.

The District Court found that Cloth's false statements about loan repayments on certain pending projects and that the *Pathway* project had been "greenlit" for five seasons "are the kinds of statements that an investor would rely upon to determine whether to invest in a new show, as the statements go to the timeline for the investor's returns on the investor's first round of investments and the strength of the new, potential investment."

Cloth claims that certain provisions in the Terms Sheets and the *Pathway* Term Sheet absolve his fraudulent conduct. Cloth misses the point.

As alleged and as the District Court found, Cloth's false statements about the Term Sheets were not made to induce RSBVP to invest in the projects that were the subjects of the Term Sheets, but, instead, Cloth's promises of repayment to Harris were made to induce him to invest (through RSBVP) in another, separate project— *Pathway*.

He also argues that the terms of the *Pathway* Term Sheet nullify his fraudulent statement that *Pathway* was "greenlit" for five seasons. However, the record reflects

that Cloth's false statement was made to make the project seem more successful and RSBVP investment far less risky than it actually was.

Cloth then turns to the contention that the District Court ignored the court's statement in *Adler v. WestJet Airlines, Ltd.*, 31 F. Supp. 3d 1381, 1386 (S.D. Fla. 2014), that promises of future action are usually insufficient to support fraud claims. Ironically, it is Cloth who ignores the District Court's exact citation to *Adler* for the principle that "[a] promise can support a fraud claim, however, when the promisor had no intention of performing at the time the promise was made." Contrasting the allegations of *Adler* with the circumstances of this case reveals that this is a quintessential example of a promise that can support a fraud claim because the promisor had no intention of performing at the time the promise was made.

To top things off, Cloth maintains that the District Court should have—at the last moment—postponed the trial to give him a further opportunity to obtain counsel. Cloth glosses over the facts that he chose to attend the Cannes Film Festival rather than appear at trial, he had ample time to secure counsel and be prepared for trial and that he—and his prospective counsel—ignored multiple admonitions from the District Court regarding moving scheduled dates and the procedures by which any new (or returning) counsel could request a continuance. Cloth is also wrong that RSBVP would not have been prejudiced by a continuance. RSBVP had incurred the time and expense of diligently preparing for trial and given Cloth's numerous other

legal entanglements and debts, RSBPV would have been severely prejudiced by any delay in trial.

The reality is that Cloth took a gamble and lost. Cloth and his counsel—the same counsel representing him in this appeal—waited until the eleventh hour to inform the District Court that counsel **might** re-appear in the District Court action—and did so by giving the District Court an ultimatum and presenting the request for a continuance in a manner the District Court had—on at least two prior occasions—warned it would reject. This Court has a long history of rejecting this type of gamesmanship. It should do so here as well.

Lastly, the jury's punitive damages award—a 2:1 ratio with the compensatory damage award—is consistent with constitutional principles. And, the award of punitive damages properly addresses Cloth's reprehensible behavior.

For these reasons, the District Court's orders should be affirmed in all respects.

## ARGUMENT

## I.  The District Court Has Personal Jurisdiction Over Cloth

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *SkyHop*, 58 F.4th at 1222. Courts in Florida employ a two-step analysis to determine whether personal jurisdiction exists over a nonresident defendant. *See id.; see also Venetian Salami Co. v. Parthenais,* 554 So.

2d 499, 502 (Fla. 1989). "A court has personal jurisdiction over a non-resident defendant if (1) the state's long-arm statute provides jurisdiction, and (2) the exercise of such jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *Tufts v. Hay*, 977 F.3d 1204, 1211 (11th Cir. 2020) (citation omitted).

On appeal, Cloth concedes that the District Court properly applied section 48.193(1)(a)(2) of Florida's long-arm statute, which provides that a person "submits himself or herself . . . to the jurisdiction of the courts of [Florida] for any cause of action arising from . . . [c]omitting a tortious act within [Florida]", to conclude that the statue provides jurisdiction over Cloth. *See generally* I.B. 21-30.

Cloth, however, takes issue with the District Court's finding that its assertion of jurisdiction over Cloth conformed to the prescriptions of the Due Process Clause. *Id.* In order to fashion his arguments, Cloth is forced to misstate the District Court's ruling and misapply this Court's precedent. This Court should reject Cloth's arguments and affirm the District Court's ruling that Cloth was properly subject to jurisdiction in Florida.

In the Order Denying Dismissal, D.E. 40, the District Court correctly explained that in order to determine if a court has specific jurisdiction over a defendant sufficient to comply with the Due Process Clause:

> (1) we first consider "whether [a] plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum" state;
> (2) then we evaluate "whether the . . . defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state";

and (3) finally, we assess "whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'"

*SkyHop*, 58 F.4th at 1229 (quoting *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013)).

## A.     RSBVP's Fraud Claim "Arises out of or Relate[s] to" Cloth's Contact with Florida

The inquiry of "whether a claim 'arises out of or relate[s] to' a defendant's contacts" focuses on the "'relationship among the defendant, the forum, and the litigation.'" *SkyHop*, 58 F.4th at 1229 (quoting *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 592 U.S. 351, 353 (2021) (quotations omitted)).  Contrary to Cloth's contention, this Court's decision in *SkyHop* is instructive and supports the District Court's exercise of jurisdiction over Cloth.

In *SkyHop*, the plaintiff alleged that the defendant in California had committed a tort by emailing the plaintiff in Florida and threatening damage to the plaintiff's software.  58 F.4th at 1228.  This Court highlighted that the *SkyHop* defendant knew from the outset that it was in contact with a Florida-based entity and found defendant's act established the required connection to demonstrate that the claim arose out of or related to the defendant's Florida-based contacts.  *Id.* at 1229.

Similarly, in *Tufts*, this Court found that the requirements of the Due Process Clause were satisfied when it exercised personal jurisdiction over a North Carolina attorney and his law firm when the attorney communicated misrepresentations to a

Florida resident who was in Florida at the time of the misrepresentations. 977 F.3d at 1211-12. The decision goes on to explain that the plaintiff's claims arose from these contacts because, but for the misrepresentations, plaintiff would not have taken certain actions. *Id.* at 1212.

Cloth does not dispute that Harris, RSBVP's principal, was located and received the subject fraudulent communications in Florida and that RSBVP is a Florida entity. *See generally* I.B. 21-30. Thus, as with *SkyHop* and *Tufts*, the District Court correctly found that Cloth's transmissions of communications (by emails and telephone calls) with fraudulent misrepresentations to Harris was sufficient to satisfy this due process requirement.

Cloth cites *Walden v. Fiore*, 571 U.S. 277 (2014), to argue that "the plaintiff cannot be the only link between the defendant and the forum." *Id.* at 23, 25. Relying on *Walden*, Cloth continues "rather than alleging that Cloth committed a tort while in Florida, Plaintiffs merely asserted that Cloth made misrepresentations though [sic] a *single* email and a *single* phone call into Florida." *Id.* at 27 (emphasis in original). This, however, is where Cloth's argument falls apart.

In *Walden*, Nevada-resident plaintiffs sued a Georgia-based defendant in Nevada after an incident that occurred entirely in Georgia. 571 U.S. at 279–80. Accordingly, the Supreme Court found that the defendant's conduct provided no connection to the forum state. *Id.* at 288–89.

*Walden*, therefore, does not provide any support for Cloth's position. But, Cloth already knows that. This Court previously explained why *Walden* does not apply:

> [Defendant] responds by citing *Walden* for the proposition that "the plaintiff cannot be the only link between the defendant and the forum." We agree that that is an accurate statement of the law. But it doesn't help [Defendant] here. . . . By contrast, here, through its emails sent to SkyHop in Florida, [defendant] directed its conduct into Florida. And that very same conduct serves as the basis for the claims SkyHop brings against it. So *Walden* does not apply here.

*SkyHop*, 48 F.4th at 1229.

In sum, the District Court properly concluded that RSBVP's claim arose from Cloth's contacts with Florida. D.E. 40.

**B.  Cloth "Purposely Availed" Himself of Florida With His Tortious Contacts**

As the District Court indicated, "[i]n cases (like this one) involving an intentional tort, two applicable tests can determine whether purposeful availment occurred: the effects test and the traditional minimum-contacts test." *SkyHop,* 58 F.4th at 1230 (citations omitted).[5] Either test suffices when analyzing this factor. *Id.* Here, the District Court correctly applied the effects test. D.E. 40.

---

[5] The effects test was articulated by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984).

To meet the effects test, "the tort must have been 'intentional, aimed at the forum state, and caused harm that the defendant should have anticipated would be suffered in the forum state.'" *SkyHop*, 58 F.4th at 1230 (quoting *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1276 (11th Cir. 2022)).  "The principal way to establish this relationship is through an 'activity or an **occurrence** that takes place in the forum State and is therefore subject to the State's regulation.'" *SkyHop*, 58 F.4th at 1229 (quoting *Ford*, 592 U.S. at 359-60) (emphasis added).

In *SkyHop*, this Court had "no difficulty" concluding that the defendant sent emails into Florida intentionally and in a tortious manner, such that it was "certainly foreseeable" to the defendant that the plaintiff would feel the effects of the tortious act in Florida where it was based.  *Id.* at 1230.  It also emphasized that the *SkyHop* defendant knew from the outset that it was in contact with a Florida-based entity. *Id.*  In totality, the *SkyHop* defendant "had reason to know that its decision and the ensuing emails could force it to defend against a lawsuit in Florida." *Id.* at 1230-31; *see also Tufts*, 977 F.3d at 1211-12 (determining that the defendant's counsel had purposefully availed themselves of Florida when counsel made "repeated misrepresentations . . . to [the plaintiff] in Florida" and that this "purposeful conduct created a substantial connection with the forum state.").

Here, the District Court recognized that the Complaint adequately alleged that Cloth made "repeated misrepresentations" to Harris.  D.E. 40.  It rightly concluded

that Cloth "purposefully availed [himself] of the laws of Florida" such that his alleged contacts satisfied the effects test. *Id.*

Cloth makes two arguments in an ill-fated attempt to convince this Court that the effects test was not satisfied: (i) the District Court, in finding it was proper to assert jurisdiction over Cloth, relied on contracts between Creative Wealth and Plaintiffs that Cloth was not a party to; and (ii) the District Court was wrong to rely on this Court's precedent in *SkyHop* and *Tufts* because the quantum of the offending contacts in those cases was greater than is present here. *Id.* at 25-29. Both arguments lack merit.

First, Cloth is forced to weave together disjointed clauses from the District Court's order in an, at best, misleading fashion to argue that the District Court focused only on the contractual relationship between Creative Wealth and Plaintiffs to establish jurisdiction. *Id.* When the District Court denied Cloth's motion to dismiss, there were two defendants in the case—Cloth and his entity, Creative Wealth. D.E. 1; D.E. 40. RSBVP and its co-plaintiff contracted with Creative Wealth. D.E. 1. So, from the District Court's perspective the contracts were certainly relevant to the separate issue of whether it had jurisdiction over Creative Wealth. D.E. 40.

While that analysis likely would have been sufficient to establish jurisdiction over Cloth as well—given he was the principal of Creative Wealth and signed the

Term Sheets on behalf of the company—the District Court went further. As is evident from the Order Denying Dismissal, the District Court did not focus solely on the contractual relationship between Plaintiffs and Cloth's co-defendant, Creative Wealth, for establishing jurisdiction over Cloth. *Id.* Instead, the District Court also highlighted Cloth's tortious actions in text notably absent from his Initial Brief:

> Here, like in *SkyHop* and *Tufts*, **Mr. Cloth made 'repeated misrepresentations' on behalf of CWMF to Mr. Harris while Mr. Harris was in Florida and while Mr. Harris was acting as the principal of the Plaintiffs, Florida-based entities**, with whom the Defendants had contracted. The Defendants contracted with the Florida-based Plaintiffs for loans for film and television projects. Because of these contracts, the contacts between the Defendants and the Plaintiffs were not fortuitous, but rather foreseeable. Therefore, the effects test is met in this case and the Plaintiffs have established that the Defendants purposely availed themselves of the laws of Florida.

*Id.* (emphasis added).

Second, Cloth urges this Court to disregard *SkyHop* and *Tufts* because, as Cloth would have it, Cloth's connection to Florida is "far more attenuated" that the defendants' connections in those cases. I.B. at 25-27. According to Cloth, the assertion of "personal jurisdiction over Cloth [is based] on a *single* email and *single* phone call to Harris (in response to Harris' inquiries)." *Id.* at 27 (emphasis in original). Cloth apparently contends that there is some quantum of fraudulent communications into Florida required to satisfy the effects test. *Id.* Yet, Cloth does

not articulate what the supposed minimum quantum is or provide any legal support for his contention.  *See generally id.* at 25-29.

Again, this is not surprising.  This Court has expressly rejected Cloth's argument—"A nonresident defendant's **single** tortious act in the forum state can satisfy the effects test, even if the defendant lacks any other contacts with the forum state." *SkyHop*, 58 F.4th at 1230 (citing *Licciardello v. Lovelady*, 554 F.3d 1280 (11th Cir. 2009)).

Seeking to brush away *SkyHop* and *Tufts*, Cloth contends that the facts of this case are more similar to *Micro Financial Advisors, Inc. v. Coloumb*, 23-11062, 2023 WL 7156898 (11th Cir. Oct.  31, 2023) and *Sun Bank, N.A. v. E.F. Hutton & Co.*, 926 F.2d 1030, 1034 (11th Cir. 1991).  I.B. at 28-29.  Not so.

In *Coloumb,* the plaintiff, a Florida corporation, provided financial services to Latin American companies.  2023 WL 7156898, at * 1.  The defendant, a Chilean citizen employed by a Guatemalan bank, was terminated by the plaintiff, leading to a severance agreement negotiated between the defendant in Guatemala and the plaintiff's representative in Florida.  *Id.*  The defendant later filed legal actions in Guatemala against the plaintiffs and others, prompting the plaintiff to file suit in Florida for fraudulent misrepresentation and other claims based on the allegation that the defendant never intended to honor the settlement.  *Id.*  at *1-*2.

The district court found that while Florida's long-arm statute applied due to the defendant's' allegedly fraudulent communications into Florida, exercising jurisdiction would not meet due process requirements, as the plaintiff was the sole link to Florida. *Id.* at *1-*2. This Court agreed, noting the lack of purposeful availment by the defendant under the effects test. *Id.* at *4.

Again, Cloth's description of the Court's holding lacks critical, dispositive context. Cloth focuses on the Court's conclusion that "Florida's tangential connection to this litigation is driven primarily by [the plaintiff's] presence in Florida and not, as it must be, [the non-resident defendants'] actions." *Id.* at *4 (citation omitted). But, notably, Cloth ignores the Court's explanation for that conclusion. In the paragraph immediately preceding the quote upon which Cloth puts so much reliance, the Court explained that *Coloumb* involved an employment dispute between a Chilean citizen and a Guatemalan bank, and that the alleged breach took place in Guatemala, when the defendant "initiated legal proceedings *in* Guatemala." *Id.* (emphasis in original).

Cloth's continued reliance on *Sun Bank, N.A. v. E.F. Hutton & Co., Inc.*, 926 F.2d 1030, 1034 (11th Cir. 1991), is also unavailing. In *Sun Bank*, unlike here, defendant Bunstein's interactions with plaintiff Sun Bank were limited to two phone calls initiated by a Sun Bank employee, during which Bunstein made fraudulent representations. *Id.* at 1032. These contacts were deemed fortuitous rather than

intentional, as they resulted from a Massachusetts customer moving to Florida and directing the bank to contact the employee. *Id.* at 1034. This Court emphasized that Bunstein did not seek out Sun Bank's business and that his contacts with the bank employee were not the result of any activity he initiated with Florida. *Id.* Based on these facts, the Court concluded that his contacts were insufficient to support personal jurisdiction. *Id.* at 1035.

It is constructive to consider *Coloumb* and *Sun Bank*, but not for the reasons Cloth asserts. Rather, the value of *Coloumb* and *Sun Bank* is to demonstrate the differences between cases in which this Court finds a defendant did not purposefully avail itself of the forum and the facts present in this case. Here, as with *SkyHop* and *Tufts*, the Florida litigation was not driven solely by RSBVP's and Harris' presence in Florida, but, instead by Cloth knowingly and purposefully directing tortious conduct consisting of multiple communications at a Florida entity and an individual who was present in and a resident of Florida.

As a final entreaty, Cloth seeks to have the Court disavow *SkyHop* and *Tufts* as inapplicable. I.B. at 25-29. Cloth argues that *SkyHop* in inapplicable because the defendants in that case actually travelled to Florida. *Id.* at 25-26; *SkyHop*, 58 F.4th at 1230. While that was a fact in *SkyHop*, a review of the decision reveals that this Court relied almost exclusively upon the tortious emails defendants sent into Florida

in affirming the district court's exercise of personal jurisdiction. 58 F.4th at 1211-32 (noting defendant's travel to Florida three times in the entire opinion).

Cloth also claims *Tufts* is inapplicable because it involved "egregious circumstance of 'repeated misrepresentations'" into Florida. I.B. at 26-27. Nowhere in the *Tufts* opinion does this Court describe the circumstances as "egregious". And the "repeated misrepresentations" in *Tufts* are extremely similar to the misrepresentations Cloth made to RSBVP's principal here. 977 F.3d at 1207, 1211.

Cloth purposefully conveyed to Harris that his prior investments would be repaid, that the *Pathway* series was "greenlit" for five seasons, and that Harris was the sole investor in *Pathway*, when he knew those statements were false. Thus, "the quality and nature" of Cloth's actions were not so "'random, fortuitous or attenuated' that [he] could not reasonably anticipate being haled into court in Florida.'" *Lovelady*, 544 F.3d at 1287 (citation omitted). The District Court properly determined that Cloth purposefully availed himself of the forum.

## C. Exercising Jurisdiction Over Cloth Comports With Traditional Notions of Fair Play and Substantial Justice

The third and final inquiry asks whether the exercise of jurisdiction in Florida accords with "traditional notions of fair play and substantial justice." *SkyHop*, 58 F.4th at 1231 (citation omitted); *Tufts*, 977 F.3d at 1211-12 (citation omitted); *Louis Vuitton*, 736 F.3d at 1358. This Court ordinarily considers four factors to resolve

this inquiry: "the burden on the defendant"; "the forum's interest in adjudicating the dispute"; "the plaintiff's interest in obtaining convenient and effective relief"; and "the judicial system's interest in resolving the dispute." *SkyHop,* 58 F.4th at 1231 (quoting *Del Valle*, 56 F.4th at 1277). The defendant bears the burden of making "a compelling case" that the exercise of jurisdiction is improper. *Id*. (quoting *Louis Vuitton*, 736 F.3d at 1355).

In finding that exercising personal jurisdiction over a defendant comported with fair play and substantial justice, this Court has explained that a "Florida plaintiff, injured by the intentional misconduct of a nonresident expressly aimed at the Florida plaintiff, is not required to travel to the nonresident's state of residence to obtain a remedy." *Lovelady*, 544 F.3d at 1288 (citing *Calder*, 465 U.S. at 1487). "Additionally, Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida." *Id.* (quotation omitted). "The Constitution is not offended by Florida's assertion of its jurisdiction over such nonresident tortfeasors." *Id.*

The District Court was correct in finding that traditional notions of fair play and substantial justice were not offended by exercising jurisdiction over Cloth. D.E. 40. Cloth fails to explain, yet alone demonstrate, how he would have been burdened by litigating in Florida. In fact, Cloth demonstrated just the opposite. He hired lawyers based in New York as lead counsel to represent him before the District

Court. *E.g.*, D.E. 17 and 18. And, as Cloth asserts, Cloth and his counsel "proceeded diligently with discovery, which was completed per the deadlines set forth in the district court's initial scheduling order." I.B. at 12.

Cloth's counsel—the same attorneys he rehired to represent him in this appeal—represented him competently and vigorously until they withdrew from representing Cloth. *See generally* Docket. And, even when Cloth was proceeding *pro se*, he was able to attend and participate in court hearings and a mediation. *See, e.g.*, May 1 Tr. In fact, when Cloth failed to appear for trial it was not because of any difficulty in traveling to Florida; it was because he chose instead to travel elsewhere—to France for the Cannes Film Festival. D.E. 93.

The District Court also correctly determined that asserting jurisdiction over Cloth was proper because Florida and its judicial system have an interest in protecting its resident from Cloth's misconduct and that RSBVP had an interest in obtaining convenient and effective relief in its home forum. D.E. 40; *Lovelady*, 544 F.3d at 1288 (Florida and its judicial system have an interest in protecting its resident from an out-of-state-defendant's misconduct); *see Louis Vuitton*, 736 F.3d at 1358 (exercising personal jurisdiction over defendant comported with fair play and substantial justice where defendant failed to show any burden from litigating in Florida, where he directed tortious activities; Florida has a strong interest in the case

due to consumer protection; and the plaintiff was present in Florida, making it efficient to resolve the dispute there).

Cloth does not make any serious argument to the contrary. I.B. at 29-30. After spending pages arguing that the Term Sheets are entirely irrelevant because Cloth was not a party to them, Cloth then argues that litigating this case in Ontario, Canada would have been fair and just "given the non-exclusive forum selection clauses in the [Term Sheets]." *Id.* at 29.

Cloth's fraught attempt to use the Term Sheets as both a sword and a shield exposes the desperation of his arguments and demonstrates that the District Court properly considered and assessed the relevant factors in concluding that it had personal jurisdiction over Cloth. The record and well-established precedent of this Court support the District Court's conclusion, which should be affirmed in all respects.

## II.    RSBVP Stated a Claim for Fraud Against Cloth

Cloth next asks this Court to overturn the jury's verdict finding fraud because the District Court should have granted Cloth's motion to dismiss pursuant to Federal Rule of Civil Procedure 9(b). I.B. at 30-36. Cloth contends the District Court erred because it disregarded the "very terms of the agreements at issue" and ignored the applicable law. *Id.* at 31. Cloth is wrong on both accounts.

Cloth first argues that his misrepresentations are not actionable because they were explicitly contradicted by the agreements governing the relevant transactions. *Id.* at 31-35. Cloth misses the point.

The false statements that were alleged in the Complaint and upon which the jury found Cloth liable for fraud fall into two categories: (i) statements about the repayment of sums that had already been loaned to Creative Wealth; and (ii) false statements about the *Pathway* project itself. D.E. 1. Cloth does not dispute the jury's finding that he told Harris that the *Fables*, *Bubbles* and *HHH* Loans would be repaid "worst case" scenario by the third quarter of 2021, that there was "zero" risk associated with those three loans, and that the *Monkey Man* Loan would be repaid in "late summer" of 2021 at the latest. I.B. at 30-36. As alleged, and as the jury concluded, Cloth knew those statements were false at the time he made them. D.E. 126.

Cloth claims the District Court failed to account for provisions in the *Fables*, *Bubbles*, and *HHH* Term Sheets providing that (i) repayment of the loans would be paid out of the gross receipts of the projects, if any; and (ii) that the lender relied on its own examination of the investments, including the risks involved. I.B. at 31-33. In support, Cloth cites a series of cases for the proposition that "a party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a **later** written contract." *Id.* at 34 (emphasis added)

(quoting *Advanced Mktg. Sys. Corp. v. ZK Yacht Sales,* 830 So. 2d 924, 928 (Fla. 4th Dist. Ct. App. 2002)). This is a red herring.

While the applicable law may have saved Cloth from a fraud claim in respect of the *Fables*, *Bubbles*, *HHH*, and *Monkey Man* loans, Cloth ignores RSBVP's actual allegations. The false statements about the Term Sheets were not made to induce RSBVP to invest in the *Fables*, *Bubbles*, *HHH*, and *Monkey Man* projects, but, instead, Cloth's promises of repayment to Harris were made to induce him to invest (through RSBVP) in another, separate project—*Pathway*. D.E. 1 ¶¶ 58-65. The language of the Term Sheets therefore do not provide a get out of jail free card to Cloth.

Cloth makes a similar argument with respect to his false statement that the *Pathway* project was "greenlit" for five seasons. I.B. at 33. Cloth claims his statement is immaterial because the *Pathway* agreement stated it was for an investment in the first season of the project only. *Id.* Once more, Cloth misses the point.

Cloth's false statement that the project had been "greenlit" for five seasons was made to make the project appear more successful and enticing than it actually was—if the series had truly been "greenlit" for five seasons, the risk of investing in the first season would be substantially negated. The fact that the actual financing was only for the first season of the project provides no shelter for Cloth.

In the end, the District Court did consider Cloth's arguments and rightly rejected them. D.E. 40. As the District Court explained, "Cloth's misrepresentations are the kinds of statements that an investor would solicit when considering a new investment and, therefore, the kinds of statements that someone would make to an investor in the hopes of soliciting new investments . . . ." D.E. 40.

Second, Cloth ironically claims that District Court erred because it ignored this Court's precedent. I.B. at 31, 36. Cloth, however, has a problem. Not only did the District Court cite and apply the controlling law, but it did so from the very case that Cloth relies on. D.E. 40.

In what is becoming a common refrain, Cloth cherry-picks clauses from a Southern District of Florida case to assert that "it is fundamental that 'promises of future action,' such as intent to perform under a contract, 'are usually insufficient'" to support a fraud claim. I.B. at 36 (citing *Adler v. WestJet Airlines, Ltd.*, 31 F. Supp. 3d 1381, 1386 (S.D. Fla. 2014)). Cloth, however, ignores the line immediately following his cited language in *Adler*—which the District Court relied on in its Order Denying Dismissal: "[a] promise can support a fraud claim, however, when the promisor had no intention of performing at the time the promise was made. This is because the statement of the promisor's present intent is considered a statement of present fact." D.E. 40 (quoting *Adler*, 31 F. Supp. 3d at 1386).

*Adler* is not an outlier. It is perfectly in line with the dictates of this Court that a promise to do something in the future is actionable where "the promisor either lacked the intention to perform the promise or specifically intended not to perform at the time the representation was made." *Royal Typewriter Co., a Div. of Litton Bus. Sys., Inc. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1104 (11th Cir. 1983) (citation omitted); *Citibank, N.A. v. Data Lease Fin. Corp.*, 828 F.2d 686, 694 n.12 (11th Cir. 1987) (citations omitted) (holding that the plaintiff "may recover for such a misrepresentation if it shows that the promisor either lacked the intention to perform the promise or specifically intended not to perform at the time the representation was made"); *see also BGW Design Ltd., Inc. v. Serv. Am. Corp.,* No. 10-20730-CIV, 2010 WL 5014289, at *2 (S.D. Fla. Dec. 3, 2010).

A review of *Adler* only serves to bolster the District Court's conclusion. In *Adler*, the plaintiffs were booked to take a flight from Fort Lauderdale to Toronto. 31 F. Supp. 3d at 1383. Prior to the flight, the plaintiffs received confirmation in writing from the defendant airline that they were approved to fly with a service dog. *Id.* However, once the plaintiffs boarded the flight and had several interactions with a flight attendant, the flight attendant had them deboarded from the airplane because she was "uncomfortable" with the plaintiffs and their service dog. *Id.* at 1384.

The plaintiffs sued the airline for fraudulent misrepresentation based on the airline's written assurance that they would be able to fly with the service dog. *Id.*

The court found that the plaintiffs did not state a claim for fraudulent misrepresentation because there was no allegation that when the airline made the written representation that the plaintiffs could fly with the service dog, it had no intention of allowing the dog on the plane. *Id.* at 1387. Put simply, how could the airline know at the time it made the written representation that the flight attendant would be "uncomfortable" with the service dog and force the plaintiffs to deplane?

Contrast the allegations of *Adler* with the circumstances of this case. The Complaint clearly alleged, and the jury found, that Cloth knew the offending statements made to RSBVP were false at the time he made them—he knew the loans would not be repaid on the schedule he promised and knew that *Pathway* was not "greenlit" for five seasons. D.E. 1; D.E. 126. This is a quintessential example of a promise that can support a fraud claim because the promisor had no intention of performing at the time the promise was made. *Compare Adler*, 31 F. Supp. 3d at 1387 (finding no fraudulent conduct when there was an intention to perform at the time of forming the contract) *with BGW Design Ltd., Inc.* 2010 WL 5014289 at *3 (finding allegation that defendant "had no intention" to perform when the representations were made sufficiently pled fraudulent misrepresentation under Rule 9(b)).

For these reasons, the District Court correctly held that RSBVP stated a cause of action for fraud against Cloth.

### III. The District Court Did Not Abuse Its Discretion in Denying Cloth's Motion for Continuance of Trial

In determining whether a denial of a continuance constitutes an abuse of discretion, this Court considers four factors: "(1) the moving party's diligence in case preparation; (2) the likelihood that granting the continuance would have remedied the need for it; (3) the level of inconvenience the court and the opposing party would have experienced had the continuance been granted; and (4) the harm that the moving party suffered." *Gonzalez v. Batmasian*, 725 F. App'x. 861, 865-866 (11th Cir. 2018).

Cloth acknowledges that this Court regularly declines invitations to reverse a district court's denial of a motion for continuance. I.B. at 37. However, Cloth immediately sweeps aside this important tenet of the Court's jurisprudence and argues that despite every purported "problem" he identifies being a problem of his— or his counsel's—own making, the District Court abused its discretion in denying the motion for continuance he made less than two weeks before the scheduled start of trial. *Id.* at 37-41.

Moreover, Cloth claims that the District Court denied his Motion for Continuance "without any explanation or analysis." *Id.* at 14, 37. Cloth's contention is perplexing. Not only did the District Court properly consider all of the relevant factors in denying Cloth's request, but the Court explicitly told him it did so: "**I**

**have taken all of the factors under consideration in making my determination that the case would proceed on Monday.**" May 1 Tr. 6:9-11 (emphasis added).

Cloth's arguments are an affront to the Eleventh Circuit's standards and the jury process itself. They should not be countenanced by this Court.

### A.  Cloth was Not Diligent

Cloth contends that he was diligent in preparing the case and adhering to Court-ordered deadlines until his counsel withdrew on February 12, 2024. I.B. at 38. Cloth then claims he was unable to continue with trial preparations or meet further pre-trial deadlines because he was not represented by counsel. *Id.*

Despite Cloth's statements, the record is clear. Cloth made the choices: (i) not to engage counsel after his lawyers withdrew (even after the District Court extended several deadlines to allow Mr. Cloth to retain counsel); (ii) not to resolve whatever issues he had with his counsel so that they would agree to represent him at trial[6]; (iii) not to participate in pre-trial proceedings *pro se*; and (iv) to fly to France for the Cannes Film Festival rather than attend trial. *E.g.*, D.E. 79, 85, 87, 93, 96, 96-1. Under these circumstances, Cloth failed to demonstrate the requisite diligence to warrant a continuance. *See, e.g.*, *Gonzalez*, 725 F. App'x. at 866 (movant was not

---

[6] While Cloth's former counsel now represents him in this appeal, they, notably, have completely disavowed even the suggestion that they represent him in the ongoing District Court proceedings. D.E. 134, 153, 157, 160.

diligent where she did not attend trial and had months of notice of the scheduled trial date).

## B.    Cloth Took a Gamble and Lost

Cloth's sole basis for arguing the need for a continuance would have been remedied by the continuance is that it would have allowed him the opportunity to retain counsel and provide counsel with an opportunity to prepare for trial.  I.B. at 39. There are a number of problems with Cloth's reasoning.

It is critical to the Court's analysis to understand why Cloth was proceeding without representation below.  From the outset of the litigation—indeed, as Cloth highlights, even before the litigation commenced—Cloth was represented in the District Court by the same lawyers from Herrick that are representing him in this appeal.  D.E. 26-1 and 27-1.  As Cloth also emphasizes, those lawyers represented him diligently and vigorously through the pre-trial proceedings. *E.g.*, I.B. at 12.

On February 6, 2024, Cloth's lawyers filed a motion to withdraw.  D.E. 7. While Cloth now maintains that they withdrew because Cloth had not been paying his bills, he conveniently ignores the fact that counsel asked the District Court to withdraw for a second reason—that their representation "has been rendered unreasonably difficult by [Cloth] for independent reasons." D.E. 67-1.  Counsel did not reveal the nature of these "independent reasons", purportedly to protect attorney-client privilege.  *Id.*  The Court granted the motion to withdraw a week later and

imposed a thirty-day stay on all proceedings to allow Cloth to retain new counsel. D.E. 71. After the expiration of that thirty-day period, the Court held a status conference to, among other things, inquire whether Cloth had secured new counsel. D.E. 79. Following the status conference, the District Court entered an order extending several pre-trial deadlines to give Cloth even more time to retain counsel and, if he was able to retain counsel, time for that counsel to participate in the pre-trial filings. *Id.* The District Court also required Cloth to notify the Court by April 3 whether he had retained new counsel and admonished "[e]ven if new counsel is retained, the Court will not reset any expired deadlines." *Id.*

On April 3 and 4, 2024, Cloth sent emails to the District Court in which he stated he had "not been able to find another attorney but I am optimistic that negotiations with Herrick are progressing well and I hope to have them back on the file very soon." D.E. 87 and 85. The District Court construed Cloth's emails as a motion to continue upcoming deadlines. D.E. 84. The Court denied that request and again warned that it would "not extend deadlines on behalf of counsel who have not made an appearance." *Id.*

Thus, by April 3 at the latest (and in reality, likely much earlier), Herrick was aware it could be back on Cloth's file and had over a month to prepare for trial. D.E. 87. Herrick was also aware at that time that if it wanted a continuance of the trial date it had to re-appear and request a continuance from the District Court. D.E. 84.

Even so, a month to prepare for trial was more than sufficient for the Herrick lawyers—who had only been out of the case for six weeks. *E.g.*, D.E. 71. Cloth claims this is a "complex, multi-million [dollar] fraud claim." I.B. at 41. Again, Cloth is arguing out of both sides of his mouth. While this is a multi-million dollar fraud claim, it involves a single term sheet that is eight pages long (including attachments), and, according to Cloth, is a fraud claim based on "a *single* email and a *single* phone call to Plaintiffs' principal." I.B. at 19 (emphasis in original). To further demonstrate the consolidated issues in the case, there were a total of four depositions taken through the course of discovery. *E.g.*, D.E. 117, 118, 119.

There is no question that it was well within the District Court's discretion to determine a month of preparation for a three to four day trial was sufficient for any lawyer, let alone lawyers of the stature from Herrick, with their decades of experience and intimate knowledge of this case.

What this demonstrates is that Cloth's Motion for Continuance to adjourn the trial date and the accompanying Herrick Declaration were a pretense. D.E. 93 and 93-1.

The Herrick Declaration is notable for several reasons. D.E. 93-1. First, while Cloth now tries to suggest that it is an established fact that Herrick would have been retained and represented Cloth at trial if the District Court had granted the request for a continuance, I.B. at 39 ("if the Court granted an adjournment that allowed

Herrick to prepare for trial, Herrick **would have** re-appeared and represented Cloth at trial" (emphasis added)), that simply was not the case. In the Declaration itself, Herrick does not commit to re-appearing before the District Court; counsel only suggested it was possible, assuming Cloth resolved his financial issues with them. D.E. 93-1. The Herrick Declaration of course does not address how the "other issues" warranting Herrick's withdrawal were resolved. *Id.*

In *Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1319-20 (11th Cir. 2008), appellant argued that the district abused its discretion in denying its request for a continuance to secure a witness's testimony for trial. Appellant knew the witness needed to be secured through the lengthy Letters Rogatory Process and had informed the district court of the same at least two months prior, yet consented to the scheduled trial date. *Id.* at 1320. This Court affirmed the district court's denial of the request for a continuance because appellant failed to establish that a continuance would have actually secured the witness's testimony. *Id.* In doing so, it cited binding precedent for the "well-settled" rule "that a district court may deny a continuance when there is no guarantee that granting one will enable a party to secure" the relief it claims it needs. *Id.* at 1320-21 (citing *United States v. Bergouignan,* 764 F.2d 1503, 1508 (11th Cir. 1985)). As is the case here, the mere possibility that Herrick might re-appear as counsel before trial does not aid Cloth's argument.

Second, in the Herrick Declaration, Cloth's lawyer gave the District Court an ultimatum—either grant a continuance or Cloth is going to proceed to trial without counsel. D.E. 93-1. Cloth's counsel was attempting to dictate to the District Court its requirements before re-appearing in the case, but it goes without saying that the District Court has the power to control its own docket. *E.g.*, *Clinton v. Jones*, 520 U.S. 681, 706 (1997).

There is, however, a more serious problem with the Herrick Declaration. D.E. 93-1. The District Court warned Cloth on at least two occasions that it would not consider requests for extensions from counsel who had not made an appearance. D.E. 79, 84. Yet, despite the District Court's great clarity on this issue, Herrick did just that. D.E. 93-1. And, did so less than two weeks before the start of trial that had been scheduled for nearly a year and a half. *Id.* We leave it to the Court to determine whether the Herrick Declaration was an honest attempt to continue the trial or whether it was a sham to set up this very argument on appeal.

At bottom, Cloth took a gamble and lost. Where a movant has adequate notice of his need for counsel, then requests a continuance of trial near the time of trial to obtain counsel, this Court has consistently found that the district court does not abuse

its discretion in denying the movant's request.[7] In such a circumstance, the movant takes a gamble and only has himself to blame for the result.[8] *Walford*, 295 F. App'x. at 357. And, taking Cloth's argument to its logical conclusion, any time that a defendant was seeking to delay a judgment against it, it could just fire and rehire counsel and buy itself a two, three, or six month continuance. That simply defies common sense, but, also importantly, runs completely counter to the law of this Circuit. The District Court was well within its discretion to deny Cloth's Motion for Continuance.

### C.     RSBVP Would Have Been Prejudiced by a Sixty-Day Continuance

This Court has found that a continuance would cause inconvenience to the opposing party where the opposing party had already prepared for trial and submitted pre-trial documents, like jury instructions. *United States v. Zangwill*, 197 F. App'x. 888, 892 (11th Cir. 2006). It has also rejected the proposition that a delay of a month and half was negligible. *Id.*

---

[7] *See United States v. Barrentine*, 591 F.2d 1069, 1075 (5th Cir. 1979); *United States v. Baker*, 432 F.3d 1189, 1252 (11th Cir. 2005), *abrogated on other grounds*; *United States v. Bowe*, 221 F.3d 1183, 1188-91 (11th Cir. 2000); *United States v. Zangwill*, 197 F. App'x. 888, 892-93 (11th Cir. 2006); *United States v. Walford*, 295 F. Appx. 354, 356 (11th Cir. 2008).

[8] *See also Baker*, 432 F.3d at 1252. Further, this Court has found no prejudice in denying a continuance where the movant was available to testify on his own behalf. *E.g.*, *Sec. & Exch. Comm'n v. Levin*, 849 F.3d 995, 1006 (11th Cir. 2017).

At the time of Cloth's Motion for Continuance, RSBVP had already spent weeks preparing for trial in compliance with the District Court's orders. D.E. 96. RSBVP was also forced to prepare the required pre-trial documents alone, rather than jointly as originally ordered by the District Court. D.E. 96-1. If a continuance was granted, RSBVP would had have to ramp up trial preparation a second time and re-do all of the joint pre-trial work at a significant cost. D.E. 96.

Most importantly, if a continuance was granted, RSBVP also would have been severely prejudiced by the further delay in its efforts to collect against Cloth. *Id.* In April of 2024, Cloth already had over ten other lawsuits filed against him individually for failure to pay debts and satisfy obligations under loan agreements similar to the case at hand. D.E. 96-2. While Cloth was not diligent in preparing for trial, he has been diligent in pulling out every stop possible to delay RSBVP's collection efforts. D.E. 148, 163, 166, 167-1. Cloth is pursuing this appeal without posting a supersedeas bond, but has ignored his obligations to participate in judgment-debtor discovery before the District Court—including ignoring several court orders. *See generally* Docket, D.E. 163, 166, 167-1.

Cloth's requested continuance would have prejudiced RSBVP. Accordingly, for this reason as well, the District Court did not abuse its discretion in denying his request.

**D.    RSBVP's Closing Arguments Were Appropriate and Any Issues Were Not Preserved**

Cloth claims that "to compound matters," RSBVP's counsel "brazenly" told the jury in closing arguments that Cloth did not care about showing up at his trial in urging an award of punitive damages.   I.B. at 41.   As an initial matter, this "argument" has no bearing on the analysis of whether the District acted within its discretion in granting the Request.

Further, no objection was raised to any comment during RSBVP's closing, as required.  *E.g.*, *Ruiz v. Wing*, 991 F.3d 1130, 1141 (11th Cir. 2021) (citation omitted). Because no timely objection was made to what Cloth terms as improper comments, this Court reviews the comments for plain error.  *Id.* This Court recognizes that "a finding of plain error is seldom justified in reviewing argument of counsel in a civil case." *Id.*  (citations and internal quotations omitted).

For the foregoing reasons, Cloth has failed to demonstrate plain error or prejudice, and this Court should affirm the District Court's decision to deny the Motion for Continuance in all respects.

**IV.    The Jury's Award of Punitive Damages was Appropriate**

Cloth now contends that the jury's award of punitive damages was unconstitutionally excessive and should be overturned.  I.B. at 42-45.  But, Cloth did not object to the jury instructions or verdict form or challenge the punitive award post-verdict before.  *See generally* May 7 and 8 Tr.  and Docket.  As such, Cloth, at

least for purposes of what he claims is a *de novo* review, is precluded that from arguing that the award of punitive damages is improper. *See, e.g.*, *Wammock v. Celotex Corp.*, 835 F.2d 818, 822 (11th Cir. 1988) (affirming award of punitive damages and finding no plain error where defendant failed to object to jury instruction on punitive damages yet sought to vacate the award on appeal).

Cloth first argues that the jury did not make a specific finding on the verdict form regarding the "reprehensibility" of Cloth's conduct. I.B. at 42. There was no requirement that the jury verdict contain a special interrogatory as to the basis for its finding that punitive damages against Cloth. D.E. 125 and 126. And, the District Court properly instructed the jury regarding the findings necessary to award punitive damages. D.E. 125. As Cloth apparently knows full well given that Cloth only makes a passing reference to the issue, since no objection was made to the jury instructions or the verdict form, the Court's review is only for plain error. *Wammock*, 835 F.2d at 822.

This is no doubt why Cloth gins up his contention that the punitive damages awarded by the jury were unconstitutionally excessive. However, Cloth's arguments on this point are equally unavailing.

When analyzing whether a punitive damages award is unconstitutionally excessive, this Court considers three "guideposts": (i) "the degree of reprehensibility of the defendant's misconduct"; (ii) "the ratio of the punitive damages award to the

actual or potential harm suffered by the plaintiff"; and (ii) "the difference between the punitive damages award and the civil penalties authorized or imposed in comparable cases." *Cote v. Philip Morris USA, Inc.*, 985 F.3d 840, 847 (11th Cir. 2021).

## A.    Guidepost 1 – Reprehensibility

There are five specific factors considered under the reprehensibility guidepost:  "(1) whether the harm caused was physical as opposed to economic; (2) whether the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; (3) whether the target of the conduct had financial vulnerability; (4) whether the conduct involved repeated actions or was an isolated incident; and (5) whether the harm was the result of intentional malice, trickery, or deceit, or mere accident.  *Cote*, 985 F.3d at 847 (citing *Myers v. Cent. Fla. Inv., Inc.*, 592 F.3d 1201, 1219 (11th Cir. 2010) (internal quotations omitted)).  "There is no requirement that a certain number of the factors be present" to find reprehensibility. *Id.*

While Cloth alludes to his belief that punitive damages should only be awarded for physical harm, the United States Supreme Court sees it differently.  As the Court explained in *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 576 (1996), "infliction of economic injury, especially when done intentionally through affirmative acts of misconduct . . . can warrant a substantial penalty".  *See also TXO*

*Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 453 (1993); *Rubinstein v. Yehuda*, 38 F.4th 982, 998 (11th Cir. 2022) (affirming award of punitive damages where harm caused was economic); *U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 614-15 (11th Cir. 2000) (affirming award of punitive damages where, in addition to emotional injury, the economic injury was intentional and done through affirmative acts).

Moreover, this Court has found that a superior-subordinate relationship injects a sense of financial vulnerability into interactions. *E.g., Myers*, 592 F.3d at 1219-20. This Court also considers vulnerability generally when analyzing the reprehensibility guidepost. *E.g., Sepulveda v. Burnside*, 432 F. App'x. 860, 865 (11th Cir. 2011) (finding that plaintiff was vulnerable as an inmate housed in a special management unit and relied upon institutional policies to protect him).

Cloth is an experienced, accomplished, and well-known film and television producer. May 7 Tr. 76:16-77:8. And, while Harris built a successful pottery business, *id.* at 72:17-74:17, he was a complete neophyte to the entertainment industry. *Id.* at 74:18-75:5, 106:11-18. Cloth used his superior of knowledge of the entertainment industry to build trust with Harris in order to later exploit Harris' vulnerability. *Id.* at 78:14-18, 111:21-25, 128:15-129:16. As Harris testified at trial, he felt "terrible" and "ashamed" as a result of Cloth's "extremely abusive" financial manipulation. *Id.* at 128:21-129:16.

Finally, this Court has consistently found that this factor is supported by a jury's verdict finding the occurrence of an intentional tort, including fraud, and awarding damages. *McGinnis v. Am. Home Mortgage Servicing, Inc.*, 901 F.3d 1282, 1289 (11th Cir. 2018); *E. Prop. Dev. LLC v. Gill*, 558 F. App'x. 882, 888-89 (11th Cir. 2014); *Kerrivan v. R.J. Reynolds Tobacco Co.*, 953 F.3d 1196, 1209 (11th Cir. 2020). The jury found that Cloth's fraudulent statements (*i.e.*, an affirmative act of misconduct) prompting RSBVP to invest in *Pathway* caused RSBVP economic injury.

RSBVP presented evidence at trial—and the jury concluded—that Cloth engaged in intentional misconduct to induce RSBVP to invest in *Pathway*. *See generally* May 7 and 8 Tr.; D.E. 121-1 – 9. He did so with the full knowledge of the adverse effect his misconduct would have on RSBVP and with willful and deliberate disregard of the consequences to RSBVP. *See generally* May 7 and 8 Tr.; D.E. 126. The jury proceeded to enter a verdict against Cloth for fraud and awarded RSBVP compensatory and punitive damages. D.E. 126. This factor weighs in favor of the punitive damages award.

## B.  Guidepost 2 – Ratio

In practice, this guidepost means the Court examines "the ratio of punitive damages to compensatory damages." *Cote*, 985 F.3d at 848 (citing *Myers*, 592 F.3d at 1221). This Court has consistently explained that "[t]here is no certain ratio at

which a constitutionally permissible award is transformed into an unconstitutionally excessive one." *Id.*; *see also Action Marine*, 481 F.3d at 1321. And, "[a]lthough 'not binding, . . . single-digit multipliers are 'more likely to comport with due process,' but [] a punitive damages award of "more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *Id.*

Here, the jury's punitive damages award was approximately twice as much as the compensatory damages award. This low ratio (2:1) is well within the bounds of constitutional propriety recognized by the Supreme Court and this Court. *E.g.*, *Cote*, 985 F.3d at 850 (11th Cir. 2021) (affirming punitive damages award with 3.3:1 ratio); *Action Marine*, 481 F.3d at 1321-22 (affirming punitive damages award with 5.4:1 ratio); *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 901 F.3d 1282, 1290 (11th Cir. 2018) (discussing decisions in which this Court upheld punitive damages awards with ratios of 5.5:1, 9.2:1, and 4:1).

In support of his argument that the punitive damages award is "grossly excessive", Cloth relies on a statement from *State Farm* suggesting that "[w]hen compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." I.B. at 44 (quoting *State Farm*, 538 U.S. at 425).

While this Court has found that statement from *State Farm* to be dicta, *State Farm* is an important case to the present analysis—just not for the —reasons Cloth

presents. *McGinnis*, 901 F.3d at 1290 (recognizing *State Farm* dicta and explaining Supreme Court's true directive); *see also Cote*, 985 F.3d at 849 (same). Indeed, *State Farm* actually supports the imposition of a punitive damages award of two-times compensatory damages in this case. Cloth, of course, fails to mention that the Court's decision in *State Farm* arose in a case where: (i) the punitive damages awarded were **145** times the compensatory damages award and (ii) the compensatory damages award included compensation for "a year and a half of emotional distress." *State Farm*, 538 U.S. at 426. As the Court observed in *State Farm*, "**[s]ingle-digit multipliers** are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with ratios in range of 500 to 1 or, in this case, of 145 to 1." *Id.* at 425 (emphasis added).

The Supreme Court also reflected that in prior opinions it had concluded that punitive damages awards of more than four-times compensatory damages "might be close to the line of constitutional impropriety." *Id.* Unlike the compensatory award conferred in *State Farm*, the jury's compensatory damage award to RSBVP simply made RSBVP whole—in fact even this is a bit of misnomer, it only returned RSBVP's investment, without any consideration for expected profit or interest. D.E. 22-11; D.E. 126; May 7 Tr. 81:16-23.

Cloth's reliance on *Allahara v. Zahora*, 59 F.3d 693, 697 (7th Cir. 1995), is similarly misplaced. I.B. at 44-45. In this Seventh Circuit decision, the court

determined that punitive damages were inappropriate because, in large part, the defendant had provided the plaintiffs with the relief they requested (the sale of a house) prior to trial. *Allahara*, 59 F.3d at 697. Here, Cloth did not repay RSBVP prior to trial. Notably, even post-trial, Cloth did not post a supersedeas bond and or taken any steps to satisfy the judgment against him. *See generally* Docket.

The jury's award of punitive damages was well within the acceptable ratio recognized by this Court and the Supreme Court and should be affirmed on this basis as well.

## C.   Guidepost 3 – Comparable Cases

Cloth lastly claims that "there are no comparable civil penalties other than those set forth in Fla. Stat. Ann. § 768.73." I.B. at 45. In relevant part, section 768.73(1) provides that, in certain circumstances, punitive damages cannot exceed three or four times the compensatory award. While this statute does not apply to RSVBP's claim, the jury's punitive damages award still falls within the boundaries of the statute. This guidepost therefore weighs in favor of the punitive award.

Based on the foregoing, this Court should continue its long history of affirming appropriate punitive damages awards entered by a jury. *E.g., Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir. 1983) (affirming jury's award of punitive damages, as Court "would be loath to interfere with the jury's factfinding responsibilities").

## CONCLUSION

The record and governing law detailed herein establish that the District Court properly denied Cloth's motion to dismiss. Exercising personal jurisdiction over Cloth comported with due process requirements. Cloth purposefully transmitted fraudulent communications to a Florida entity, and the effects of those actions were felt in Florida. Under these circumstances, litigating in Florida comported with traditional notices of fair play and substantial justice.

In the same vein, RSBVP both alleged and established to a jury that Cloth committed fraud. He made promises of repayment related to the Term Sheets and false statements as to the status of the *Pathway* project to induce Harris to invest in the *Pathway* project. Pursuant to this this Court's precedent, this is fraud.

The District Court appropriately exercised its discretion in denying Cloth's eleventh-hour request for a continuance of trial. Cloth lacked diligence and was given ample opportunity to cure the problem he created. On appeal, he completely disregards that his request and his counsel's ultimatum to the District Court would have prejudiced RSBVP.

Lastly, the jury's verdict awarding RSBVP punitive damages conclusively complied with constitutional standards. As Harris testified, Cloth's fraud was both economically and emotionally reprehensible. The award was well within the bounds of propriety for punitive damages.

Cloth has not presented any valid legal or factual basis to overturn the District Court's orders or the jury's award. As such, the District Court's orders and the jury's award should be affirmed in all respects.

Dated: December 20, 2024

Respectfully submitted,

/s/ Scott N. Wagner
Scott N. Wagner
Fla. Bar No.: 51662
**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
1450 Brickell Ave., Suite 2300
Miami, Florida 33131-7580
Tel: 305-350-7386
Email: swagner@bilzin.com
Email: eservice@bilzin.com

David B. Jonelis
**LAVELY & SINGER PROFESSIONAL CORPORATION**
2049 Century Park East, Suite 2400
Los Angeles, California 90067
Tel.: (310) 556-3501
Email: djonelis@lavelysinger.com

*Attorneys for Plaintiff-Appellee*
*RSBV Pathway LLC*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because the brief contains 12,656 words, excluding the parts of the brief exempt by Federal Rule of Appellate Procedure 32(f) and Eleventh Circuit Local Rule 32-4.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Scott N. Wagner*
Scott N. Wagner

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

*/s/ Scott N. Wagner*
Scott N. Wagner