# No. 24-12278

# United States Court of Appeals

## *for the*

## Eleventh Circuit

ROBERT SCOT BUILLDING VENTURE LLC,
RSBV PATHWAY LLC,

*Plaintiffs-Appellees,*

— v. —

JASON CLOTH,

*Defendant-Appellant.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO: 9:23-cv-80282-RLR
*(Robin Lee Rosenberg, U.S. District Judge; Bruce E. Reinhart, U.S. Magistrate Judge)*

## REPLY BRIEF OF APPELLANT

WILLIAM R. FRIED
SAMUEL J. BAZIAN
HERRICK, FEINSTEIN LLP
2 Park Avenue, Floor 22
New York, New York 10016
(212) 592-1611

LEONARD K. SAMUELS
BERGER SINGERMAN, LLP
201 East Las Olas Blvd., Suite 1500
Ft. Lauderdale, Florida 33301
(954) 525-9900

W. PERRY HICKS
BERGER SINGERMAN, LLP
1540 Brickell Ave. SE, Suite 1900
Miami, Florida 33131
(305) 755-9500

*Counsel for Defendant-Appellant Jason Cloth*

CP COUNSEL PRESS    (800) 4-APPEAL • [812102]

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Cir. R. 26.1-1, 26.1-2(a), and 26.1-3, Appellant, Jason Cloth ("Appellant" or "Cloth"), provides the following Certificate of Interested Persons and Corporate Disclosure Statement:

Bazian, Samuel J., Counsel for Appellant

Berger Singerman LLP, Counsel for Appellant

Bilzin Sumberg Baena Price & Axelrod LLP, Counsel for Appellees

Cloth, Jason, Appellant

Creative Wealth Media Finance Corp., Defendant

Curtis, Marianne, Counsel for Appellant

Drescher, IIana Arnowitz, Counsel for Appellees

Fried, William R., Counsel for Appellant

Herrick, Feinstein LLP, Counsel for Appellant

Hicks, William Perry, Counsel for Appellant

Jonelis, David, Counsel for Appellees

Koutsodendris, Stephanie, (former) Counsel for Appellees

Lavely & Singer, Counsel for Appellees

Leeker, Kelsey J., Counsel for Appellees

Reinhart, Hon. Bruce E., United States District Court Magistrate Judge

Robert Scot Building Venture LLC, Appellee

Rosenberg, Hon. Robin L., United States District Court Judge

RSBV Pathway LLC, Appellee

Sakona, Shalia, Counsel for Appellees

Samuels, Leonard K., Counsel for Appellant

Wagner, Scott N., Counsel for Appellees

Appellant certifies that he is not aware of any other entities with an interest in the outcome of this case, including subsidiaries, conglomerates, or affiliates.

# TABLE OF CONTENTS

**Page**

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT**.................................................C-1

**TABLE OF AUTHORITIES**.................................................................. ii

**ARGUMENT** ...............................................................................................1

    I.    This Court Should Dismiss the Action Against Cloth for Lack of
Personal Jurisdiction.................................................................3

    II.    The Fraud Claim Should Have Been Dismissed for Failure to
State a Cause of Action .........................................................9

    III.    Cloth Should Have Been Granted a Continuance of Trial; Denial
of His Reasonable Request Severely Prejudiced Cloth and Was
an Abuse of Discretion .......................................................12

        A.    The Opposition Baselessly Attempts to Discredit Cloth
and His Counsel .....................................................12

        B.    Cloth's Continuance Motion Was No "Gamble".....................14

    IV.    At a Minimum, The Jury's Excessive Punitive Damages Award
Should Be Vacated..................................................................18

**CONCLUSION**..........................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Action Marine, Inc. v. Cont'l Carbon Inc.*,
    481 F.3d 1302 (11th Cir. 2007) ........................................................................22

*Adler v. WestJet Airlines, Ltd.*,
    31 F. Supp. 3d 1381 (S.D. Fla. 2014) ..............................................................11

*Cote v. Philip Morris USA, Inc.*,
    985 F.3d 840 (11th Cir. 2021) ..........................................................................21

*Diamond Tr. u/a/d 10/28/2005 v. Diamond*,
    No. 21-11985, 2022 WL 4493035 (11th Cir. Sept. 28, 2022)............................20

*E. Prop. Dev. LLC v. Gill*,
    558 F. App'x 882 (11th Cir. 2014)....................................................................21

*Future Tech. Today, Inc. v. OSF Healthcare Sys.*,
    218 F.3d 1247 (11th Cir. 2000) ...........................................................................7

*Gastaldi v. Sunvest Resort Communities, LC*,
    709 F. Supp. 2d 1284 (S.D. Fla. 2010)........................................................17, 18

*Guevara v. Republic of Peru*,
    608 F.3d 1297 (11th Cir. 2010) ...........................................................................7

*Kerrivan v. R.J. Reynolds Tobacco Co.*,
    953 F.3d 1196 (11th Cir. 2020) ........................................................................21

*Koziol v. Bombardier-Rotax GmbH*,
    No. 02-61807-CIV, 2004 WL 5563674 (S.D. Fla. Mar. 23, 2004), *aff'd sub nom. Kozial v. Bombardier-Rotax GmbH*, 129 F. App'x 543 (11th Cir. 2005) ...8

*Lacy v. BP P.L.C.*,
    723 F. App'x 713 (11th Cir. 2018)....................................................................12

*McGinnis v. Am. Home Mortg. Servicing, Inc.*,
    901 F.3d 1282 (11th Cir. 2018) ........................................................................21

*Peer v. Lewis*,
  No. 08-13465, 2009 WL 323104 (11th Cir. Feb. 10, 2009)...............................20

*Romero v. Drummond Co.*,
  552 F.3d 1303 (11th Cir. 2008) ...........................................................................16

*SkyHop Technologies, Inc. v. Narra*,
  58 F.4th 1211 (11th Cir. 2023) ........................................................................4, 7

*Smith-Weik Mach. Corp. v. Murdock Mach. & Eng'g Co.*,
  423 F.2d 842 (5th Cir. 1970) ........................................................................17, 18

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
  538 U.S. 408 (2003)......................................................................................19, 20

*Tufts v. Hay*,
  977 F.3d 1204 (11th Cir. 2020) .....................................................................4, 6

*United States v. Zangwill*,
  197 F. App'x 888 (11th Cir. 2006).....................................................................17

*World-Wide Volkswagen v. Woodson*,
  444 U.S. 286 (1980)..............................................................................................9

*XP Glob., Inc. v. AVM, L.P.*,
  No. 16-CV-80905, 2016 WL 6679427 (S.D. Fla. Nov. 14, 2016)....................12

## Statutes

Fla. Stat. Ann. § 768.73 .......................................................................................22

## **ARGUMENT**

Appellee RSBV Pathway LLC's ("RSBVP") response to Cloth's[1] appeal, while filled with rhetoric and disingenuous positions, fails to defend the district court's Orders denying Cloth's motion to dismiss and motion for a continuance of trial, and cannot justify the jury's excessive $13 million punitive damages award.

With regard to the district court's denial of Cloth's motion to dismiss for lack of personal jurisdiction, RSBVP argues that "[t]his Court has routinely found that similar situations establish the requisite connection among the nonresident defendant, forum, and litigation," (A.B. at 14[2]), yet it fails to cite any case in which such limited contact between a nonresident and Florida was found to be sufficient to satisfy due process. Cloth never set foot in Florida in connection with the transactions at issue in this case, he was not a party to any contracts with RSBVP, and he is merely alleged to have made fraudulent representations by email on one day and in one phone call. Cloth could not have anticipated being sued in Florida based on these few communications, and the district court should have dismissed the Complaint against him for lack of personal jurisdiction.

---

[1] Terms not otherwise defined herein shall have the same meanings ascribed to them in Cloth's Initial Brief in this appeal. Doc. No. 22 ("Initial Brief" or "I.B.").

[2] "A.B." refers to RSBVP's Answer Brief dated December 20, 2024. Doc. No. 29.

Similarly, RSBVP asserts that the fraud claim was properly sustained against Cloth. Although it concedes that it could not have asserted a claim that it was fraudulently induced to enter into the *Fables*, *Bubbles*, *HHH* and *Monkey Man* Contracts because the alleged misrepresentations—*i.e.*, that those investments carried "zero" risk and would soon be repaid—are contradicted by the express terms of those agreements, it argues that it is not barred from asserting that those alleged misrepresentations induced it to enter into the subsequent *Pathway* Contract. But because reliance on alleged misrepresentations is unreasonable as a matter of law where the statements are belied by the express terms of a contract, it similarly follows that RSBVP could not have reasonably relied on those same alleged contradictory misrepresentations in deciding whether to enter into the *Pathway* Contract.

RSBVP also argues that although the *Pathway* Contract expressly provided that the investment was for (and would be repaid from) the first season, it believed—based on Cloth's alleged misrepresentation that *Pathway* was "greenlit" for five seasons—that the project was "more successful and enticing than it actually was." A.B. at 33. But RSBVP never made such an allegation, and the district court did not base its decision on such a belated claim.

As for Cloth's motion for a continuance, RSBVP portrays Cloth as though he deliberately decided not to proceed with trial and filed a motion for a continuance

merely as a sham to set up arguments on appeal. That could not be further from the truth. Cloth repeatedly advised the district court that he could not proceed to trial on the multi-million dollar claim against him, that he was on the verge of re-engaging counsel and that if he was granted a continuance, he—and his counsel— could appear. The district court, though it had never previously continued trial, nevertheless denied Cloth's request without any written explanation or analysis of the factors relevant to such a motion.

Finally, RSBVP attempts to support the jury's grossly excessive punitive damages award by referencing case law where substantial punitive damage awards were granted against large corporations engaged in repeated misconduct without regard for the health and safety of the plaintiffs at issue. And, RSBVP attempts to portray its own principal—a successful business owner who previously invested millions of dollars into films—as financially vulnerable. But Cloth is already facing a compensatory damages award of more than $6.5 million—though, for the reasons set forth in this appeal, that should be vacated as well—and any further award of damages against him is neither necessary nor warranted. An additional $13 million award of punitive damages is patently unfair and should be vacated.

## I. This Court Should Dismiss the Action Against Cloth for Lack of Personal Jurisdiction

In his Initial Brief, Cloth demonstrated that the district court erred when it denied his motion to dismiss this action for lack of personal jurisdiction. Specifically,

Cloth established that he is a Canadian resident who never once met with RSBVP's principal (Harris) in Florida, never entered into any agreements with RSBVP—let alone one which provided for jurisdiction in Florida—and never engaged in any conduct indicating that he was availing himself of Florida's laws. All Plaintiffs alleged was that Cloth made purported misrepresentations through email correspondence on one day, and in a single phone call on another, in response to Harris' inquiries. Exercising jurisdiction over Cloth therefore offended due process.

In response, RSBVP defends the district court's reliance on *SkyHop Technologies, Inc. v. Narra*, 58 F.4th 1211 (11th Cir. 2023), and *Tufts v. Hay*, 977 F.3d 1204 (11th Cir. 2020), for the proposition that Cloth "purposely availed" himself of Florida law by allegedly making "repeated misrepresentations" to Harris on behalf of Creative Wealth while Harris was in Florida and acting as principal of the Florida-based Plaintiffs, "with whom Defendants had contracted." D.E. 1. RSBVP argues that, like the defendants in those cases, "Cloth's transmission of communications (by emails and telephone calls) with fraudulent misrepresentations to Harris was sufficient to satisfy this due process requirement." A.B. at 20.

In so arguing, RSBVP ignores that, unlike the plaintiffs in those inapposite cases which involved *repeated* misrepresentations into Florida as well as defendants' meetings in Florida and/or entry into contracts with Florida-based plaintiffs, here, Cloth was alleged to have made misrepresentations through email on a *single* day

and in a *single* phone call into Florida. However, Cloth *never* met with RSBVP in Florida and did not enter into *any* contracts with RSBVP.

RSBVP attempts to minimize these critical distinctions. Specifically, RSBVP concedes that the district court apparently misapprehended that "*Defendants* had contracted" with Plaintiffs, and it attempts to distance itself from the district court's accompanying reasoning that "because of these contracts, the contacts between the Defendants and the Plaintiffs were not fortuitous, but rather foreseeable." D.E. 40 at 11 (emphasis added).

RSBVP instead mischaracterizes Cloth's argument as "argu[ing] that the District Court *focused only* on the contractual relationship between Creative Wealth and Plaintiffs to establish jurisdiction. A.B. at 23 (emphasis added). Based on that strawman argument, RSBVP asserts that "the District Court also highlighted Cloth's tortious actions in text notably absent from his Initial Brief," and quotes the district court's statement that "Mr. Cloth made 'repeated misrepresentations' on behalf of CWMF to Mr. Harris while Mr. Harris was in Florida and while Mr. Harris was acting as the principal of the Plaintiffs, Florida-based entities." *Id.* at 24.

There are two primary problems with RSBVP's argument. *First*, Cloth never argued that the district court focused only on the contracts between Plaintiffs and Creative Wealth. In fact, Cloth *did* reference the district court's characterization that Cloth allegedly made "repeated misrepresentations," (I.B. at 24), despite the fact that

this assertion, too, misapprehended Plaintiffs' allegations. Indeed, RSBVP does not contest the fact that, rather than alleging "repeated misrepresentations," they alleged only that Cloth made misrepresentations in one email chain and one phone call.

*Second*, RSBVP cannot avoid the reality that the district court explicitly based its finding that the contacts between "Defendants" (*i.e.*, Creative Wealth *and* Cloth) were foreseeable, at least in part, because of the contracts to which the district court presumably believed Cloth was a party. That reasoning cannot apply to Cloth, who had no contractual relationship with RSBVP, and it should not have factored into the district court's analysis whether Cloth purposely availed himself of Florida laws.

RSBVP is aware of this flaw in the district court's Order, and it is therefore forced to lean heavily on the district court's assertion that Cloth's purported "repeated misrepresentations" to Harris, while Harris was in Florida, were sufficient to establish jurisdiction over Cloth. A.B. at 24-25. But despite the district court's use of language from *Tufts* to analogize that case to this one—there, this Court held that the defendant made "repeated misrepresentations," *Tufts*, 977 F.3d at 1211-1212—here, RSBVP did not allege that Cloth made repeated misrepresentations to Harris. RSBVP simply alleged that, on February 24, 2021, Cloth stated by email that *Fables*, *Bubbles*, *HHH* and *Monkey Man* investments would soon be repaid, (D.E. 1 ¶¶ 44-46), and in May 2021, Cloth told Harris in one phone call that that the *Pathway* series "had already been 'greenlit' for five seasons and that Harris should

6

therefore invest in that project." *Id.* ¶ 47. Further, RSBVP concedes that Cloth never traveled to Florida in connection with the business dealings between Creative Wealth and RSBVP. A.B. at 27-28.

While RSBVP points to this Court's statement in *SkyHop* that "[a] nonresident defendant's single tortious act in the forum state can satisfy the effects test, even if the defendant lacks any other contacts with the forum state[,]" *SkyHop Techs., Inc.*, 58 F.4th at 1230, it has not cited to any case in which this Court found such minimal contact with Florida (*i.e.*, a single email chain on one day and a single phone call) without more, met the effects test.

This Court has held, however, that even if such minimal contacts with Florida could meet Florida's long-arm statute's "technical requirements," "the due process considerations of minimum contacts and fair play prevent the action from going forward in this court." *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1252 (11th Cir. 2000) (finding it was improper to exercise jurisdiction over nonresident defendant which made only a single phone call into Florida concerning a business transaction and never visited the state); *see also Guevara v. Republic of Peru*, 608 F.3d 1297, 1310 (11th Cir. 2010) (stating that, "[i]n the context of personal jurisdiction, however, we have rejected the argument that one telephone call is sufficient to create minimum contacts with the forum state").

Cloth did not purposefully avail himself of the laws of Florida, and he could not have reasonably anticipated being hailed into a Florida court. Therefore, asserting personal jurisdiction over Cloth violated due process and this Court's binding precedent.

Moreover, traditional notions of fair play and substantial justice warranted dismissal for lack of personal jurisdiction. RSBVP argues that Cloth did not explain how he would be burdened by litigating in Florida, given that he actually did proceed with this case in Florida. But that circular argument makes little sense; Cloth was forced to litigate in Florida when the district court denied his motion to dismiss and despite the burden he faced.[3] *Koziol v. Bombardier-Rotax GmbH*, No. 02-61807-CIV, 2004 WL 5563674, at *2 (S.D. Fla. Mar. 23, 2004), *aff'd sub nom. Kozial v. Bombardier-Rotax GmbH*, 129 F. App'x 543 (11th Cir. 2005) ("In light of the international context, the heavy burden on the alien Defendants and the slight interests of the State of Florida, the exercise of personal jurisdiction by a Florida court over Defendants would be unreasonable and unfair.").

---

[3] RSBVP's argument that Cloth could have appeared at trial in Florida but "chose instead to travel elsewhere—to France for the Cannes Film Festival," (A.B. at 30), is deliberately misleading. Cloth requested a continuance of trial to retain new counsel, and he regularly attends the Cannes Film Festival, which he advised the Court was the most important film festival of the year for his business of film financing. D.E. 93.

Similarly, any interest that Florida may have in adjudicating this action was outweighed by the burden on Cloth, since the burden on the defendant is "always a primary concern." *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 292 (1980). This Court should therefore reverse the district court's order which denied Cloth's motion to dismiss for lack of personal jurisdiction.

## II. The Fraud Claim Should Have Been Dismissed for Failure to State a Cause of Action

Cloth established in his Initial Brief that RSBVP's fraud claim should have been dismissed for failure to state a cause of action because the claim was based on purported "misrepresentations" that were contradicted by the express language of the contracts between Plaintiffs and Creative Wealth and/or they were nonactionable statements concerning when Cloth expected certain repayments to be made. I.B. at 31-36.

RSBVP concedes that a fraud claim cannot be based on purported misrepresentations that are contradicted by a later written contract, (A.B. at 33), and it remains undisputed that Cloth's alleged misrepresentation that *Pathway* had been "greenlit" for five seasons was contradicted by the title of the *Pathway* Contract, which stated that the financing was for the first season of the series, as well as its repayment provision, which stated that RSBVP's investment would be repaid "from gross receipts generated by the first season of the Project …, if any." D.E. 22-11 at 1-2.

RSBVP's argument that, notwithstanding these provisions, Cloth's alleged misrepresentation made the project appear "more successful and enticing than it actually was[,]" (A.B. at 33), was neither alleged by RSBVP in its Complaint, (*see generally* D.E. 1), nor provided as a basis for the district court's finding that RSBVP stated a claim for fraud. D.E. 40 at 3-7. All the district court found was that Cloth's alleged statements were the kinds "that an investor would solicit when considering a new investment and, therefore, the kinds of statements that someone would make to an investor in the hopes of soliciting new investments," (*id.* at 7), but for the reasons set forth in the Initial Brief, reliance on a statement contradicted by the actual terms of the contract at issue is unreasonable as a matter of law. I.B. at 34.

With respect to the alleged misrepresentations that the *Fables*, *Bubbles*, and *HHH* investments had "zero" risk and that those projects (as well as the *Monkey Man* investment) would soon be repaid, RSBVP implicitly concedes that those alleged statements were explicitly contradicted by the agreements governing those transactions. A.B. at 32-33. RSBVP acknowledges that "the applicable law may have saved Cloth from a fraud claim in respect of the *Fables*, *Bubbles*, *HHH* and *Monkey Man* loans," yet it argues that RSBVP can still assert a claim that those purported misrepresentations induced it to invest in the subsequent *Pathway* project. *Id.* at 33.

But if the clear acknowledgements of risk and repayment dates set forth in the agreements made it unreasonable as a matter of law for RSBVP to rely on those statements and prevented RSBVP from asserting a fraud claim with respect to those investments—and RSBVP admits as much—the same logic must apply to RSBVP's investment in *Pathway*. Said another way, *any* reliance RSBVP placed on alleged statements that contradicted the clear terms of the *Fables*, *Bubbles*, *HHH* and *Monkey Man* agreements must have been unreasonable as a matter of law, regardless of whether such statements induced RSBVP to invest in those projects or a subsequent project.

Moreover, contrary to RSBVP's contentions, Cloth's alleged statements concerning the timing of repayment were, at best, mere promises of intention to perform actions in the future, not actionable misrepresentations giving rise to a fraud claim. RSBVP attempts to distinguish the facts of this case from those in *Adler v. WestJet Airlines, Ltd.*, 31 F. Supp. 3d 1381, 1386 (S.D. Fla. 2014), on the grounds that Cloth, unlike the defendant in *Adler*, "knew the offending statements made to RSBVP were false at the time he made them." A.B. at 36. But like the plaintiff in *Adler* who merely conclusorily alleged that the defendant "knew or should have known that its representation was false" at the time the representation was made and therefore could not "supply the necessary allegations of intent" to support a claim of fraud, (*id.* at 1387), RSBVP, too, conclusorily alleged, based merely on information

and belief, that Cloth knew his statements were false at the time they were made. D.E. 1 at ¶¶ 44-46. These allegations were insufficient to support a fraud claim. *See e.g.*, *Lacy v. BP P.L.C.*, 723 F. App'x 713, 716 (11th Cir. 2018) (conclusory allegations based on speculation insufficient to state a claim for fraud); *XP Glob., Inc. v. AVM, L.P.*, No. 16-CV-80905, 2016 WL 6679427, at *6 (S.D. Fla. Nov. 14, 2016) (rejecting plaintiff's request to infer, "based on mere conjecture and speculation," that defendant did not intend to keep its promise).

## III. Cloth Should Have Been Granted a Continuance of Trial; Denial of His Reasonable Request Severely Prejudiced Cloth and Was an Abuse of Discretion

As detailed in Cloth's Initial Brief, the district court abused its discretion when it denied Cloth's motion for a 60-day continuance, which would have allowed Cloth the opportunity to secure representation and allow adequate time to prepare for trial. *See* I.B. at 37-41.

In response, RSBVP fails to meaningfully demonstrate how the relevant factors weigh in favor of upholding the district court's decision, and it asserts a multitude of factual and legal inaccuracies in an attempt to discredit Cloth and impugn his counsel's integrity.

### A. The Opposition Baselessly Attempts to Discredit Cloth and His Counsel

RSBVP's Answer Brief is rife with disingenuous positions and allegations that attempt to discredit Cloth's filing of a motion for a continuance.

*First*, RSBVP claims that each "problem" faced by Cloth was "a problem of his—or his counsel's—own making," and that Cloth made the choice "not to resolve whatever issues he had with his counsel so that they would agree to represent him at trial." A.B. at 37, 38. While it is true that Herrick and Berger Singerman sought leave to withdraw as Cloth's counsel on February 6, 2024 due to then-unresolved issues concerning Herrick's legal fees, (D.E. 67), on April 3 and 4, 2024, Cloth advised the district court that he was negotiating with Herrick to re-appear as his counsel and that he was optimistic he would have Herrick re-engaged soon. D.E. 85, 87.

By the time Cloth was on the verge of re-engaging Herrick, there were only roughly three weeks until the commencement of trial, and he therefore filed his Continuance Motion. D.E. 93. Herrick advised that once re-engagement was finalized, it was willing to resume its representation if Cloth's Continuance Motion was granted, such that Herrick had sufficient time to adequately prepare for trial. *Id*. Put simply, Herrick was in no position to represent Cloth at trial in a multi-million-dollar fraud action without adequate time to prepare. *Id.* As a result, Herrick could not resume its representation unless the Continuance Motion was granted. *Id.*

Additionally, RSBVP's assertion that Cloth made the choice "to fly to France for the Cannes Film Festival rather than attend trial" is deliberately misleading. A.B. at 38. As RSBVP knows—because Cloth expressly advised the district court—Cloth did not choose to attend the Cannes Film Festival for pleasure; as he explained, the

Cannes Film Festival was a critical business event for film financing, and Cloth went "solely for business purposes, because [he was] in the process of trying to sell 3 films at the festival." D.E. 93.

Next, RSBVP attempts to counter Cloth's showing that the district court denied his Continuance Motion without analysis or explanation by calling Cloth's argument "perplexing" and arguing that the district court not only properly considered "all of the relevant factors in denying Cloth's request, but the Court explicitly told him it did so." A.B. at 37-38. Yet, RSBVP confusingly fails to provide any support for that assertion, referring only to the district court's statement that "I have taken all of the factors under consideration in making my determination that the case would proceed on Monday." *Id.* RSBVP's argument proves Cloth's point: the district court did not provide any reasoning whatsoever for its decision to deny the Continuance Motion; it instead denied the motion without any explanation or analysis of the relevant factors.

## B. Cloth's Continuance Motion Was No "Gamble"

RSBVP contends that Cloth "took a gamble and lost" when he filed the Continuance Motion, (A.B. at 39-44), and even goes so far as to baselessly accuse Herrick of engaging in gamesmanship.

*First*, RSBVP argues that "by April 3 at the latest (and in reality, likely much earlier), Herrick was aware it could be back on Cloth's file and had over a month to

prepare for trial." *Id.* at 40. This assertion is blatantly disingenuous. Herrick could not prepare for trial until it was re-engaged as counsel, and by the time negotiations progressed to the point that re-engagement became likely, trial was only a few weeks away. Had Herrick reappeared without a continuance, Herrick (and Cloth) would have been placed in an unfair and compromised position at trial.

*Second*, RSBVP attempts to downplay the complexity of this case by referring to it simplistically as an action involving "a single term sheet that is eight pages long" and only "four depositions taken through the course of discovery." A.B. at 41. But as RSBVP is aware, the parties exchanged thousands of documents in discovery, the action involves far more than a single term sheet—though RSBVP conveniently and misleadingly portrayed it as such when it presented its case unopposed—and it involved claims seeking millions of dollars in damages. At bottom, a few weeks to prepare for trial was neither feasible nor proper under these circumstances.

*Third*, RSBVP labels the Fried Declaration accompanying the Continuance Motion as a "pretense" that is "notable for several reasons." A.B. at 41. For example, RSBVP asserts that, in the Fried Declaration, "Herrick does not commit to re-appearing before the District Court; counsel only suggested it was possible, assuming Cloth resolved his financial issues with them." *Id.* at 42. But at that time, Herrick stated that it "would be willing and be in a position to re-appear as Defense counsel in this action" if the Continuance Motion was granted, (D.E. 93-1 ¶ 7), and

the District Court never asked for confirmation on whether Herrick would resume its representation if it granted a brief continuance. Instead, the court merely disposed of Cloth's Continuance Motion with no explanation. *See* May 1 Tr. 6:4-7:2.

RSBVP also cites *Romero v. Drummond Co.*, 552 F.3d 1303, 1320 (11th Cir. 2008), for the proposition that "the mere possibility that Herrick might re-appear as counsel before trial does not aid Cloth's argument." A.B. at 42. But that case is plainly inapposite and actually supports Cloth's position. There, after trial was already continued *four* times—for six months, five months, seven months and then two months—plaintiff sought another continuance of trial for the purpose of securing testimony from a witness, but the district court denied the motion because, *inter alia*: (i) the plaintiff agreed to the trial date even though it knew it might not be able to secure the testimony by the trial date; (ii) several witnesses were traveling from multiple countries and the parties were coordinating multiple translators; and (iii) the court found that the plaintiff would not suffer undue prejudice because plaintiff planned to offer two other witnesses at trial who would offer similar testimony. *Romero*, 552 F.3d at 1321.

The facts here are plainly distinguishable. Trial was never continued, a continuance would not have prejudiced the district court or RSBVP, and Cloth—who is not a lawyer and was incapable of representing himself at trial—was severely prejudiced by denial of the Continuance Motion. Although RSBVP responds that it

would have suffered prejudice in the form of having to "re-do" certain pre-trial work and potentially delaying its ability to collect a judgment from Cloth, (A.B. at 44-45)—though RSBVP does not cite any case law to support the proposition that these factors qualify as prejudice warranting denial of a continuance,[4] particularly in light of its position that this case is simple (*see* A.B. at 41)—the harm that Cloth suffered by having to proceed to trial without counsel is deemed prejudicial as a matter of law. *See Gastaldi v. Sunvest Resort Communities, LC*, 709 F. Supp. 2d 1284, 1296 (S.D. Fla. 2010) ("denials have been held to cause prejudice where, for example, a party needed time to obtain new counsel . . . but, because of the denial, was required to proceed with unfamiliar counsel or none at all.") (citations omitted); *Smith-Weik Mach. Corp. v. Murdock Mach. & Eng'g Co.*, 423 F.2d 842, 844 (5th Cir. 1970) ("In Anglo-American law, with trials based on the adversary system as the best means of arriving at a just and legal result, the interests of justice in this case required that

---

[4] Though RSBVP does cite to *United States v. Zangwill*, 197 F. App'x 888, 892 (11th Cir. 2006), that case involved a defendant's *second* request for a continuance after the defendant "had already succeeded in postponing the trial for a period of two months" so that defendant's counsel had adequate time to prepare for trial. *Id.* Moreover, while RSBVP cites to this case for the proposition that a party would be prejudiced if it had already submitted jury instructions, that only tells part of the story. The district court in *Zangwill* found there would be significant inconvenience if trial were delayed because "[a]t the time the continuance was sought, the government had obtained a writ and had arranged for the transportation of one witness from a federal penitentiary in Ohio," "[j]ury instructions had already been filed in the case," and "the government had prepared and scheduled the testimony of fifteen witnesses, both law enforcement officers and victims, all of whom later testified at [defendant]'s trial." *Id.*

both parties be represented by able counsel well informed on the facts and the pertinent law.").

Finally, RSBVP absurdly claims that the Fried Declaration "gave the District Court an ultimatum" and insinuates that it served as a "sham to set up this very appeal." A.B. at 43. But the Fried Declaration was nothing more than a submission explaining the need for an extension of time to prepare for trial. That request was not a "sham" and cannot be seriously construed as one, given that parties regularly make such requests, and courts have found denials of motions for a continuance to be prejudicial in certain circumstances. *See Gastaldi*, 709 F. Supp. 2d at 1296; *Smith-Weik Mach. Corp.* 423 F.2d at 844. In sum, the district court should have granted Cloth's request for a continuance of trial. The denial was an abuse of discretion and should be reversed.

## IV. At a Minimum, The Jury's Excessive Punitive Damages Award Should Be Vacated

RSBVP argues that the jury's $13 million punitive damages award was not unconstitutionally excessive. Initially, it contends that Cloth simply cannot challenge the award, given that he did not object to the award. *See* A.B. at 46 (citing trial transcript and Docket). But because the district court denied Cloth's motion for a continuance of trial, he was not present at trial and could not object or defend himself at that time. With Cloth absent, RSBVP's counsel advised the jury that Cloth "didn't even bother to show up for this trial, which indicates he has a complete

disregard for addressing the consequences of his actions and the losses he has caused to his investors," (May 8 Tr. p. 33:23-34:2), and then urged the jury to "calculate punitive damages by multiplying that $6.5 million [investment in *Pathway*] by one, two, three, or whatever times you think are appropriate [to] punish and deter Mr. Cloth." *Id.* p. 34:11-13. Mere minutes later—and after less than a half hour of deliberations—the jury rendered its verdict, including for $13 million in punitive damages. *Id.* at 37:11-19, 39:6-10.

In discussing the three guideposts used to review punitive damages awards, RSBVP resorts to mischaracterizing Cloth's arguments and the record. For example, with respect to the first guidepost—the "reprehensibility" of the alleged misconduct—RSBVP asserts that Cloth believes "punitive damages should only be awarded for physical harm" and argues that punitive damages may also be awarded in situations where an economic injury was caused to a financially vulnerable individual. But Cloth did not argue that punitive damages could *only* be awarded for physical harm; he instead cited the controlling Supreme Court precedent which states that one of the "reprehensibility" factors is whether "the harm caused was physical as opposed to economic." *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003). Here, it is undisputed that Cloth did not cause any physical harm to RSBVP (or its principal, Harris).

And, despite RSBVP's strained efforts to portray Harris as unsophisticated and financially vulnerable, RSBVP concedes that Harris was a wealthy and successful entrepreneur who previously made substantial investments in the film industry, millions of which were paid back with considerable returns. *See* A.B. at 49; May 7 Tr. at 77:19-25; p. 78:1-6; *see also Diamond Tr. u/a/d 10/28/2005 v. Diamond*, No. 21-11985, 2022 WL 4493035, at *2 (11th Cir. Sept. 28, 2022) (affirming denial of punitive damages where, among other things, the plaintiff had "extreme wealth and [wa]s not financially vulnerable"); *Peer v. Lewis*, No. 08-13465, 2009 WL 323104, at *3 (11th Cir. Feb. 10, 2009) (finding no error in reduction of punitive damages award where, among other things, the counterclaimant "did not indicate that he was financially vulnerable; to the contrary, [counterclaimant] testified that he had a successful business and had worked for many years in the technology field").

Nor does RSBVP even attempt to argue that other factors relevant to the "reprehensibility" analysis weighed in favor of an enormous punitive damages award, such as whether Cloth's alleged misconduct "evinced an indifference to or a reckless disregard of the health or safety of others"—it clearly did not—or whether "the conduct involved repeated actions"—it did not. *See State Farm*, 538 U.S. at 419.

Similarly, with regard to the second guidepost—the ratio of punitive damages to compensatory damages—RSBVP characterizes the approximate 2:1 ratio of

punitive damages to compensatory damages in this case as "low," and argues that higher ratios have been approved as constitutionally proper in other cases. A.B. at 51-53. But Cloth did not argue that higher ratios have not been upheld in other cases; he instead argued, based on Supreme Court precedent, that where a compensatory damages award is substantial, a lower ratio is appropriate. *See* I.B. at 44.

Tellingly, RSBVP does not cite a single case where a punitive damages award anywhere near this magnitude has been upheld against *an individual*. It instead cites to cases in which: (i) a $3 million award was upheld against a *corporation* that caused economic harm *and* intentionally inflicted emotional distress, *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 901 F.3d 1282, 1285 (11th Cir. 2018); (ii) a $250,000 punitive damages award was upheld, *E. Prop. Dev. LLC v. Gill*, 558 F. App'x 882, 886 (11th Cir. 2014); (iii) a less than 2:1 ratio of punitive to compensatory damages (*i.e.*, $25.3 million to $15.8 million) was awarded against tobacco giants Philip Morris USA Inc. ("Philip Morris") and R.J. Reynolds Tobacco Company, when they were found liable for conspiring to conceal the effects of nicotine cigarettes, which caused significant physical harm, *Kerrivan v. R.J. Reynolds Tobacco Co.*, 953 F.3d 1196, 1200 (11th Cir. 2020); (iv) a 3.3:1 ratio of punitive damages was upheld against Philip Morris, *Cote v. Philip Morris USA, Inc.*, 985 F.3d 840, 843 (11th Cir. 2021); and (v) a 5:1 ratio of punitive damages was upheld against a corporation that established a years' long pattern of intentional and

"exceedingly reprehensible" misconduct by, among other things, releasing contaminants into the environment, reflecting a reckless disregard for the health or safety of others, *Action Marine, Inc. v. Cont'l Carbon Inc.*, 481 F.3d 1302, 1320 (11th Cir. 2007). Each case is woefully inapposite.

With regard to the third guidepost—whether there are comparable civil penalties authorized in comparable cases—RSBVP argues that, although Fla. Stat. Ann. § 768.73 does not apply, the jury's punitive damages award falls within the boundaries of that statute and it should therefore be upheld. But as stated in his Initial Brief and herein, Cloth is not a multinational corporation that inflicted physical harm or engaged in a pattern of intentional misconduct, evincing the reckless disregard for the health or safety of others. The jury's award of over $6.5 million in compensatory damages against Cloth personally—for alleged misrepresentations made in connection with an investment that RSBVP made with Creative Wealth—was more than enough punishment. An additional award of punitive damages—and especially one of $13 million—was excessive and should be vacated.

## CONCLUSION

For the foregoing reasons and those set forth in his Initial Brief, Cloth respectfully requests that the Court reverse the district court's Orders.

Dated: February 10, 2025

Respectfully submitted,

BERGER SINGERMAN LLP

By: */s/ Leonard K. Samuels*
Leonard K. Samuels
Florida Bar No. 501610
lsamuels@bergersingerman.com
W. Perry Hicks
Florida Bar No. 1050892
phicks@bergersingerman.com
East Las Olas Blvd., Suite 1500
Ft. Lauderdale, FL 33301
Telephone: (954) 525-9900

HERRICK, FEINSTEIN LLP

By: */s/ Samuel J. Bazian*
William R. Fried, Esq.
New York Bar No. 2166676
Samuel J. Bazian, Esq.
New York Bar No. 5300215
Two Park Avenue
New York, New York 10016
Telephone: (212) 592-1400

*Attorneys for Appellant Jason Cloth*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) as the brief contains 5,444 words, excluding those parts exempted by 11th Cir. Local R. 32-4.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) as this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

Dated: February 10, 2025         By: */s/ Samuel J. Bazian*_____
                                       Samuel J. Bazian

**CERTIFICATE OF SERVICE**

I hereby certify that on February 10, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified in the manner specified, either via transmission of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notice of Electronic Filing.

By: */s/ Samuel J. Bazian*
Samuel J. Bazian